**TRINITY UNIVERSAL INSURANCE COMPANY, Petitioner,**

v.

**Cathy HALL, Respondent.**

**No. 83SC2.**

Supreme Court of Colorado,
En Banc.

Nov. 5, 1984.

Mark R. Davis, Stephen E. Connor, Wood, Ris & Hames, P.C., Denver, for petitioner.

Michael E. McLachlan, Keith Newbold, Thomas L. LeClaire, Hamilton, Shand & McLachlan, P.C., Durango, for respondent.

Richard W. Laugesen, Denver, amicus curiae.

DUBOFSKY, Justice.

We granted certiorari to review the Court of Appeals opinion in *Hall v. Trinity Universal Insurance Co.*, 660 P.2d 1298 (Colo.App.1982), which held that the plaintiff, Cathy Hall, is entitled to personal injury protection (PIP) benefits from the defendant, Trinity Universal Insurance Co. (Trinity). We affirm the judgment of the Court of Appeals.

In 1978 the plaintiff was buying refreshments from a truck used as a refreshment stand when a collapsible side awning permanently attached to the truck fell and struck her head. At the time of the injury the truck was stationary, serving food and drink at a farm auction off public highways. The plaintiff, who was seriously injured, initially brought suit against the owner of the truck, Westwind Corporation d/b/a Kater King, the manufacturer of the truck, and the manufacturer of the awning's support system. She added Trinity, the insurer of the truck, as a defendant after Trinity refused to pay her PIP benefits under the Colorado Auto Accident Reparations Act (Act), sections 10–4–701 to –723, 4 C.R.S. (1973 & 1983 Supp.).[1] Trinity argued that its policy did not cover the plaintiff's injuries. The Trinity insurance policy included an endorsement for PIP coverage which provided in part:

[Trinity] will pay, in accordance with the Colorado Auto Accidents Reparation Act,

---

1. In its brief Trinity admitted that it issued a policy of automobile insurance on the truck, which at that time had been modified to be used as a refreshment stand; and, at oral arguments, counsel for Trinity stated that the company knew that the truck was used as a refreshment stand.

personal injury protection benefits for ... bodily injury sustained by an eligible injured person caused by an accident arising out of the use or operation of a motor vehicle as a motor vehicle.

The plaintiff moved for summary judgment on her PIP claim against Trinity, and Trinity, admitting that there were no material issues of fact, filed a cross-motion for summary judgment. The district court concluded that plaintiff's injuries did not arise out of the use or operation of a motor vehicle "as a motor vehicle" and granted Trinity's motion. The Court of Appeals determined that Trinity's adding the words "as a motor vehicle" to the phrase "arising out of the use or operation of a motor vehicle" constituted an impermissible limitation on the coverage required under the Act and reversed the decision of the district court.

We granted certiorari on the following issues: whether the plaintiff was a pedestrian under the Act; whether her injuries arose "out of the use or operation of a motor vehicle" under the PIP coverage provisions of the Act; and whether the addition of the words "as a motor vehicle" in the Trinity endorsement for PIP coverage is an impermissible restriction on the coverage required by the Act. We conclude that the plaintiff was a pedestrian, that her injuries entitle her to PIP coverage, and that if Trinity intended to limit its coverage with the phrase "as a motor vehicle," the limitation is invalid. We, therefore, affirm the judgment of the Court of Appeals and remand the case for further proceedings.

## I.

The General Assembly declared that the purpose of the Colorado Auto Accident Reparations Act "is to avoid inadequate compensation to victims of automobile accidents; to require registrants of motor vehicles in this state to procure insurance covering legal liability arising out of ownership or use of such vehicles and also providing benefits ... to persons injured in accidents involving such vehicles." § 10–4–702, 4 C.R.S. (1973). The Act requires every owner of a motor vehicle to have an insurance policy that complies with the provisions of the Act. § 10–4–705(1), 4 C.R.S. (1983 Supp.). A complying policy must provide legal liability coverage, § 10–4–706(1)(a), 4 C.R.S. (1983 Supp.), and PIP coverage. § 10–4–706(1)(b)–(1)(e) (1973 & 1983 Supp.). Section 10–4–707 describes who is eligible for PIP coverage. Specifically, section 10–4–707(1)(c), 4 C.R.S. (1973) provides in relevant part that PIP coverages are applicable to "[a]ccidental bodily injury arising out of accidents occurring within this state sustained by any other person ... while a pedestrian if injured in an accident involving the described motor vehicle."[2]

The first issue we address is whether the plaintiff was a pedestrian at the time of her injury. Under the Act, " '[p]edestrian' means any person not occupying or riding in or upon a motor vehicle or machine operated by a motor or engine." § 10–4–703(9), 4 C.R.S. (1973). The plaintiff was standing by the truck at the time of her injury and under the plain language of the Act was a pedestrian.

Trinity argues, however, that the Court of Appeals opinion in *Smith v. Simpson,* 648 P.2d 677 (Colo.App.1982), *cert. denied,* July 6, 1982, indicates that the plaintiff was not a pedestrian for purposes of the Act. In *Smith,* the plaintiffs were injured when the defendant lost control of her car and drove off the road and through a wall of the plaintiffs' home. The plaintiffs were asleep in their beds at the time of the accident. The Court of Appeals concluded that the plaintiffs' injuries were not covered by the Act. Despite the broad definition contained in the Act, the Court of Appeals held that "a pedestrian is normally one who is on or about a highway or street, or at least afoot, and voluntarily in the proximity of a motor vehicle." *Id.* at 679.

We disagree with the restriction imposed by the Court of Appeals on the

---

**2.** A "described motor vehicle" means the motor vehicle described in the complying insurance policy. § 10–4–703(4), 4 C.R.S. (1973).

Act's definition of a pedestrian in *Smith v. Simpson.* There is no reason not to construe the Act in accordance with the plain language of the General Assembly. Our responsibility is to give effect to a legislative enactment according to its plain and obvious meaning. *People v. Owens,* 670 P.2d 1233 (Colo.1983). A pedestrian is any person not occupying or riding in or upon a motor vehicle. We, therefore, overrule that portion of *Smith v. Simpson* that limits the Act's definition of a pedestrian.

■ As a pedestrian under the Act, the plaintiff may recover PIP benefits if she was "injured in an accident involving" an insured motor vehicle. § 10–4–702, 4 C.R.S. (1973). The term "involving" must be read in conjunction with the specific language describing the required PIP coverage in section 10–4–706, 4 C.R.S. (1973) which provides that PIP coverage must compensate for injuries "arising out of the use or operation of a motor vehicle." Reading the Act as a whole, we conclude that the General Assembly intended the general phrase "involving [a] motor vehicle" to have the same meaning as the more specific phrase "arising out of the use or operation of a motor vehicle." *See* § 2–4–205, 1B C.R.S. (1980). Therefore, the issue before us is whether the plaintiff's injuries "[arose] out of the use or operation of a motor vehicle" and entitle her to PIP benefits from Trinity.

■ Statutory language should be construed to carry out the intent of the General Assembly. § 2–4–212, 1B C.R.S. (1980); *Dailey v. Industrial Commission,* 680 P.2d 231 (Colo.1984). The intent of the Act is to require owners of motor vehicles to obtain insurance covering legal liability arising from ownership or use of a vehicle and to protect persons injured in accidents involving a motor vehicle. With these purposes in mind, we construe the phrase "arising out of the use ... of a motor vehicle" to mean that there must be a causal connection between the use of the vehicle and the injuries sustained, and conclude that the plaintiff's injuries arose out

of the use of a motor vehicle. The truck's owners were using the truck as a refreshment stand, which required the awning attached to the truck to be open. There is thus a causal connection between the use of the truck and the plaintiff's injuries arising from the awning's collapse.

Before the adoption of the Act, this court construed similar language in individual insurance policies in a manner that supports our reading of the Act. In *Azar v. Employers Casualty Co.,* 178 Colo. 58, 495 P.2d 554 (1972), an occupant of an automobile accidentally discharged his shotgun in the car, injuring the other passenger. The issue was whether the injuries "arose out of the use of the automobile." 495 P.2d at 555. This court first defined the phrase "arising out of the use":

The phrase "arising out of the use" in automobile liability policies has generally been construed broadly and comprehensively, and to mean "originate from," "grow out of," or "flow from."

*Id.* This court also held "that there must be a causal relation or connection between the injury and the use of the vehicle in order for the injury to come within the meaning of the phrase 'arising out of the use' of a vehicle." *Id.* Noting that there was no contention that the vehicle contributed to the discharge of the gun, the court concluded that the injuries were not covered by the insurance policy. In *Titan v. Nolf,* 183 Colo. 188, 515 P.2d 1123, 1126 (1973), this court fleshed out the "causal connection" test, applying a "but for" test of causation, which it distinguished from what it called the "actual use" doctrine.[3] The insurance policy in *Titan* covered accidents arising out of the use of any automobile and specified that "use" included loading and unloading. The plaintiff was a driver for a ready-mix concrete company. Standing next to his truck waiting for concrete to be poured, he was injured when a hose connected to the truck's chute knocked a brick from the top of a building; the brick struck the driver's head. This court held that there was sufficient causal

---

**3.** This court in *Azar v. Employers Casualty Co.,* 178 Colo. 58, 495 P.2d 554 (1972), also said that

"use" in an automobile policy "means *use of a vehicle as such,* not a use foreign to its inherent

connection between the use of the truck and the driver's injuries because the accident would not have occurred except for the unloading of the vehicle. As in *Titan*, the plaintiff's injuries here would not have occurred except for the use of the truck for the sale of refreshments. Therefore, we conclude that the plaintiff's injuries arose out of the use of a motor vehicle.

II.

Trinity argues that it properly included the language "as a motor vehicle" in its PIP endorsement because the Colorado Commissioner of Insurance issued a notice to all Colorado insurance carriers with suggested language to be included in endorsements for PIP coverage which read "bodily injury arising out of the use or operation of a motor vehicle as a motor vehicle." Colorado Motor Vehicle Reparation Act (No Fault Implementation Requirements/Guidelines), Nov. 5, 1973. While we give deference to the construction of a statute by administrative officials charged with its enforcement, *City and County of Denver v. Industrial Commission*, 690 P.2d 199, 203 (Colo.1984), we are not bound by the construction if it limits the coverage required under the Act. *Meyer v. State Farm Mutual Automobile Insurance Co.*, 689 P.2d 585, 592–93 (Colo.1984); *Travelers Indemnity Co. v. Barnes*, 191 Colo. 278, 552 P.2d 300 (1976).

The Court of Appeals held that the addition of the words "as a motor vehicle" in the Trinity insurance policy is an impermissible limitation on the required coverage under the Act. We agree. Although it is not necessary to read the poli-

cy language as a limitation on liability in this case,[4] if Trinity interprets the language in a way that limits the coverage required under the Act, the language is invalid. *Meyer*, at 592–93; *Marquez v. Prudential Property and Casualty Insurance Co.*, 620 P.2d 29 (Colo.1980). The plaintiff is an injured person to whom benefits are payable under the Act.

Judgment affirmed and case remanded.

---

purpose, to which the vehicle might conceivably be put." *Id.* 495 P.2d at 555 (emphasis supplied by court). *See State Automobile & Casualty Underwriters v. Beeson*, 183 Colo. 284, 516 P.2d 623 (1973) (insufficient causal connection between injury and use of either vehicle for auto insurance coverage when child sitting in car was hit in eye by truck keys tossed from third story window); *Mason v. Celina Mut. Ins. Co.*, 161 Colo. 442, 423 P.2d 24 (1967) (liability did not arise out of the use of parked vehicle when passenger accidentally discharged pistol, killing fellow passenger).

**4.** A vehicle may be used to sell food and drink. Here, where the pickup truck had been factory-modified for use as a catering truck and mobile refreshment stand, language referring to its use as a motor vehicle does not necessarily exclude liability in this case. The use of a motor vehicle as contemplated in the insurance policy depends upon the factual context of each case. *Hartford Accident and Indem. Co. v. Booker*, 140 Ga.App. 3, 230 S.E.2d 70 (1976) (uninsured motorist endorsement in insurance policy for use of garbage truck includes injured who was struck by uninsured vehicle while carrying large garbage container about 30 feet from truck).