**Daniel J. ROSE, Petitioner,**

v.

**ALLSTATE INSURANCE COMPANY, Respondent.**

**No. 88SC67.**

Supreme Court of Colorado,
En Banc.

Oct. 30, 1989.

Duane A. Cole, Fort Collins, for petitioner.

Stephen J. Jouard, Fischer, Brown, Huddleson & Gunn, P.C., Fort Collins, for respondent.

Laird Campbell, Richard W. Laugesen, Robert L. McGahey, Jr., Anderson, Campbell & Laugesen, Denver, for amicus curiae, State Farm Mut. Auto. Ins. Co.

Justice MULLARKEY delivered the Opinion of the Court.

We granted certiorari to review the judgment of the court of appeals in *Rose v. Allstate Insurance Co.*, 754 P.2d 416 (Colo. Ct.App.1987), reversing the trial court's finding that the petitioner, who was injured in an accident involving two automobiles, was a "pedestrian" within the meaning of section 10–4–703(9), 4A C.R.S. (1987), of the Colorado Auto Accident Reparations Act (the Act). We affirm the judgment of the court of appeals, although for reasons other than those set forth in its opinion.

## I.

The facts of this case are not in dispute. On the evening of November 19, 1983, the petitioner Daniel Rose, together with two companions, drove in a pickup truck from their homes in Cheyenne, Wyoming to spend the evening in Fort Collins. At about 2:00 a.m. the next morning, the men began their trip home. The driver of the pickup drove off onto the shoulder of the highway and stopped in order to remove his jacket. Rose also stepped out of the vehicle on the passenger side for the same purpose. Upon changing his mind, Rose began to re-enter the pickup when it was struck by a vehicle driven by the insured of the respondent Allstate Insurance Company (Allstate) resulting in injury to Rose. The exact position of Rose at the time of impact was stipulated by the parties: Rose had one hand on the dashboard, one hand on the armrest, and was in the process of re-entering the vehicle. Whether Rose had both feet on the ground at the time of the collision or whether one foot was in the air is uncertain. However, it is undisputed that Rose intended to re-enter the vehicle and return to Cheyenne.

## II.

### A.

The Auto Accident Reparations Act (adopting the so-called "no-fault" insurance plan) requires every owner of a motor vehicle who operates or who knowingly permits another to operate that motor vehicle on the highways of this state to have an insurance policy which complies with the provisions of the Act. Section 10–4–705(1), 4A C.R.S. (1987). Among other things, a complying policy must provide personal injury protection (PIP) benefits. Section 10–4–706(1)(b) and (c). These benefits provide "compensation without regard to fault" up to the statutory limits to cover costs such as medical expenses and rehabilitative procedures for injuries arising out of the use or operation of the motor vehicle. *Id.*

There are three potential sources of PIP benefits for an injured person in Rose's

circumstances. First, if the driver of the vehicle in which the injured person is riding has the appropriate coverage as required by section 10-4-705(1), 4A C.R.S. (1987), then under section 10-4-707(1)(c) such coverage would extend to the injured person if he is injured in an accident involving that vehicle whether he is a pedestrian or an occupant. Second, if the injured person himself has complying insurance for another vehicle then such insurance would also cover his injuries under section 10-4-707(1)(a), 4A C.R.S. (1987). Third, if the injured person is a pedestrian and is injured in an accident involving a motor vehicle, then, under section 10-4-707(1)(c), that vehicle's insurance would cover his injuries. Section 10-4-707(3) establishes procedures to be followed in the event of overlapping coverage.

The reason for this dispute is that if Rose was a pedestrian at the time of the accident, then Allstate, as the insurer of the vehicle which struck him, must pay him PIP benefits under its insurance policy with its insured. The statutory basis for Rose's claim that Allstate must pay him PIP benefits is section 10-4-707 of the Act which states in relevant part:

> Section 10-4-707. **Benefits payable.** (1) The coverages described in section 10-4-706(1)(b) to (1)(e) shall be applicable to: ... (c) Accidental bodily injury arising out of accidents occurring within this state sustained by any other person while occupying the described motor vehicle with the consent of the insured or while a pedestrian if injured in an accident involving the described motor vehicle.

Thus, if Rose was "occupying" the pickup of his Wyoming companion at the time of this accident and therefore was not a "pedestrian," then Allstate is not liable to pay him PIP benefits and Rose's recourse for compensation would be to the driver of the pickup or the driver's insurer. In this case, the driver apparently was not insured and may be personally liable. *See* § 10-4-705(2), 4A C.R.S. (1987) (owner of vehicle who fails to have complying policy in force shall be personally liable for payment of benefits).

The problem for both the court of appeals and for this court is the lack of specific statutory direction in interpreting the terms "occupying" and "pedestrian". The term "occupying" is not separately defined by statute. The term "pedestrian" is defined by section 10-4-703.

> **Definitions.** As used in this part 7, unless the context otherwise requires:
>
> .    .    .    .    .
>
> (9) "Pedestrian" means any person *not occupying* or riding in or upon a motor vehicle or machine operated by a motor or engine (emphasis added).

In interpreting the meaning of the two terms, we must consider how defining "occupying" will determine the definition of "pedestrian." We previously considered the definition of the term "pedestrian" as used by section 10-4-703 in *Trinity Universal Insurance Co. v. Hall*, 690 P.2d 227 (Colo.1984). In *Trinity* we held that the term "pedestrian" includes any person not occupying or riding in or upon a motor vehicle who is injured in an accident involving that motor vehicle. *Trinity*, 690 P.2d at 230. In *Trinity* we concluded that a person was a pedestrian when she was patronizing a truck used as a refreshment stand and was injured by the collapse of an awning attached to the truck. *Trinity* did not define the term "occupying" and does not answer the question of whether the term "occupying" includes the act of entering into or alighting from a motor vehicle.

The district court found that because Rose was not completely in or out of the vehicle, he was a pedestrian. The court of appeals, in reversing the district court, adopted a test used by the Pennsylvania courts to distinguish pedestrians from occupants. Under this test "an injured person is considered to be occupying a vehicle in which he has been riding until all connection with it is severed and he has thereby become 'highway oriented' as opposed to 'vehicle oriented.'" *Rose*, 754 P.2d at 417 (*quoting Tyler v. Insurance Co. of N. Am.*, 311 Pa.Super. 25, 457 A.2d 95 (1983)). The court of appeals found that Rose was "ve-

hicle oriented," and thus was "occupying" the Wyoming vehicle.

The court of appeals' test requires a court to examine the intent of the injured person in order to determine whether he is "vehicle oriented" or "highway oriented." Thus, under the Pennsylvania court's application of the test, a person who was 97 feet away from his vehicle when he was killed was "vehicle oriented" and therefore an occupant because he intended to return to the vehicle. *Contrisciane v. Utica Mut. Ins. Co.*, 312 Pa.Super. 549, 459 A.2d 358 (1983).

While we agree that Rose was an occupant of the pickup when it was struck by Allstate's insured, we decline to adopt the Pennsylvania test followed by the court of appeals. If the pedestrian or occupant status of an injured person were made to turn on his subjective intent, it would be difficult both for insureds and insurers to know whether the injured person is properly classified as a pedestrian or an occupant. Under the Act's no-fault principles, classification of the injured person normally will be determinative only of which insurer must pay for a party's injuries. 1 M. Bender, *No–Fault and Uninsured Motorist Automobile Insurance* 7–23 (1985). A nebulous standard, based on the intent of the injured person, would encourage disputes between insureds and insurers as well as among insurers, contrary to the clear intent of the legislature that benefits be paid promptly. *See* § 10–4–708, 4B C.R.S. (1987).

Our responsibility is to give effect to a legislative enactment according to its plain and obvious meaning. *Trinity*, 690 P.2d at 230. However, as the many cases cited to this court by the parties show, the terms "occupying" or "occupant" lend themselves to a variety of plausible interpretations. *See*, Annotation, *What Constitutes Occupancy of a Motor Vehicle for Purposes of No–Fault Automobile Insurance Coverage*, 35 A.L.R.4th 364 (1985). The word "occupy" is defined in the dictionary as "to fill up [a place or extent]." *Webster's New International Dictionary* 1561 (3d ed. 1986).

In the context of "occupying" an automobile, some courts have interpreted the word quite broadly to include numerous acts done outside the automobile. *See Newcomb Hosp. v. Fountain*, 141 N.J.Super. 291, 357 A.2d 836 (Law Div.1976) (person who left vehicle at service station injured watching attendant add water to the radiator); *State–Wide Ins. Co. v. Murdock*, 31 A.D.2d 978, 299 N.Y.S.2d 348 (1969) (passenger walking to front of vehicle to assist in starting); *Pagan v. Motor Vehicle Accident Indem. Corp.*, 51 Misc.2d 664, 273 N.Y.S.2d 740 (Sup.Ct.1966) (working on a battery). Other courts have given a more narrow definition to the term "occupant" or "occupying". *See Thomas v. Travelers Ins. Co.*, 87 Misc.2d 136, 384 N.Y.S.2d 610 (Sup.Ct.), *aff'd* 54 A.D.2d 608, 387 N.Y.S.2d 498 (1976) (person returning to auto from restaurant not occupant because he was not actually entering into automobile).

Many of the courts which interpreted "occupant" or "occupying" broadly did so in order to extend coverage to an injured person under insurance schemes other than "no-fault" insurance. In *Royal Globe Insurance v. Frankenmuth Mutual Insurance*, 419 Mich. 565, 574–75, 357 N.W.2d 652, 657 (1984), the court rejected a broad definition of "occupant" given in a prior case under an earlier statutory scheme as "unnecessary and inappropriate" under no-fault principles. In *Royal Globe*, the plaintiff was injured when her husband inadvertently stepped on the gas pedal instead of the brakes as he was backing a car owned by his employer into the family garage. He struck his wife, pinning her against the wall. Under the Michigan statutory scheme, if the plaintiff was an occupant of the car which struck her then the insurer of that car would have had to pay for her injuries. Otherwise the insurer of her own vehicle had to pay. The Michigan court, in finding that the plaintiff was not an occupant of the vehicle driven by her husband, distinguished an earlier case, *Nickerson v. Citizens Mutual Insurance Co.*, 393 Mich. 324, 224 N.W.2d 896 (1975), which had adopted an expansive definition of the term "occupant":

The decision as to the meaning of the statutory term "occupant" determines only which of the two contesting insurance carriers in this case pays the no-fault benefits. Thus, a purposely broad construction of the term "occupant," for the public policy purpose of finding coverage, and, as the *Nickerson* Court put it, to guard against recovery based entirely upon "fortuitous circumstances" is unnecessary and inappropriate.

*Royal Globe,* 419 Mich. at 574, 357 N.W.2d at 657.

The court found that more critical under the no-fault scheme was

the need to further the goal of the no-fault act which seeks to provide victims of motor vehicle accidents with *prompt* reparation for their losses. That purpose is better served in cases such as the one before us by the certainty and predictability that a literal construction of the word "occupant" will yield, when it is assigned its primary and generally understood meaning.

*Id.* (emphasis in original). The *Royal Globe* court found it unnecessary to decide whether the term "occupant" included the act of entering into or alighting from an automobile. *Id.*

Rose argues that the legislative declaration of section 10–4–702, stating that the purpose of enacting the no fault act included "to avoid inadequate compensation to victims of automobile accidents," requires this court to leave the terms in question ambiguous. He reasons that such ambiguity will allow trial courts to impose liability in a manner which will maximize insurance coverage in a particular case instead of limiting coverage on the basis of inflexible definitions of the statutory terms of "pedestrian" and "occupying." In this case, he argues, the terms ought to be construed so as to bring his injuries within the coverage of Allstate's policy. We disagree.

Leaving discretion with the trial courts to construe statutory terms flexibly in order to maximize coverage in every factual situation is inconsistent with the statutory scheme requiring each motor vehicle owner to maintain his own insurance. Section 10–4–702, 4A C.R.S. (1987). Also, if the meaning of the term "occupying" is to be fashioned on a case-by-case basis, then every case will need appellate construction. *Reynolds v. Transport Ins. Co.,* 178 Ga. App. 462, 465, 343 S.E.2d 502, 505 (1986). Such ambiguity would discourage settlements and cause delays in payments of benefits, a result in the interest of neither insureds nor insurers. Furthermore, the construction of the statute urged by petitioner would limit the term "occupying" to include only when a person is riding in or upon a motor vehicle. This would make the word "occupying" mere surplusage contrary to established principles of statutory construction. *See* § 2–4–201(1)(b), 1B C.R.S. (1980) (entire statute intended to be effective); *Johnston v. City Council,* 177 Colo. 223, 493 P.2d 651 (1972) (court must give effect to every word of an enactment, if possible). This is so because "pedestrian" is defined as any person not "occupying *or riding in or upon* a motor vehicle" (emphasis added). Thus, unless "occupying" encompasses acts other than riding in or upon a motor vehicle, its inclusion in the statute is redundant.[1]

B.

■ Allstate contends that the Act is better construed as requiring a consistent application of its language to include "common sense" definitions of "occupying" and "pedestrian" which can be applied easily in many different factual situations. In its view, definitional certainty is important so that insurance companies and insureds can

---

1. We recognize, however, that the Act is not entirely consistent in its use of these terms. Although the definition of pedestrian in section 10–4–703 excludes those who are "occupying or riding in or upon" a motor vehicle, section 10–4–707 establishing benefits payable only expressly distinguishes "pedestrians" and those "occupying" a vehicle. Thus, to avoid the absurd creation of an uninsured third category of victims of automobile accidents (i.e., those who are merely "in or upon" a motor vehicle), we must for purposes of section 10–4–707 include in the definition of "occupying" those who are "in or upon" a motor vehicle.

effect prompt and equitable settlements of rights. Allstate urges that we construe "occupying" so as to include any person who is in or upon a vehicle, or who has begun the immediate act of entering into or alighting from a vehicle.[2] We agree.

This definition has been widely accepted by the insurance industry in standardized endorsements to no-fault policies. *See* Colorado endorsements, collected in 3 I. Schermer, *Automobile Liability Insurance* CO–1 (1989); *see also* the following state endorsements collected in 4 M. Bender, *No Fault and Uninsured Motorist Automobile Insurance* E–1 to E–77 (1985): New York, Florida, Kansas, Minnesota, and South Carolina. The industry standard certainly is not controlling in our construction of the Act. *See Trinity*, 690 P.2d at 231 (rejecting policy definition of "pedestrian" as inconsistent with the Act). It is helpful here because it is logical and, moreover, we have no concern about attempted overreaching in the industry's selection of this definition. Here, the definition is based on neutral principles because it only serves to determine which of two or more insurance companies must pay benefits.

The construction which we adopt also is consistent with the definition given to the term "occupying" or "occupant" in a number of state statutes and by appellate courts. *See* Ga.Code Ann. § 33–34–2(8) (1989); Ore.Rev.Stats. § 743.800(7)(C) (1967); Utah Code Ann. § 31A–22–301 (1986); *Clinton v. National Indem. Co.*, 153 Ga.App. 491, 265 S.E.2d 841 (1980); *Salinas v. Economy Fire & Casualty Co.*, 43 Ill.App.3d 509, 2 Ill.Dec. 389, 357 N.E.2d 556 (1976); *Galle v. Excalibur Ins. Co.*, 317 N.W.2d 368 (Minn.1982); *Weber v. State Farm Mut. Auto. Ins. Co.*, 284 N.W.2d 299 (N.D.1979).

It may seem inequitable to allow Allstate to avoid paying PIP benefits to an uninsured person injured by a vehicle driven by Allstate's insured. However, the premise of a no-fault scheme is to avoid such determinations of fault with respect to minor injuries. *Bushnell v. Sapp*, 194 Colo. 273, 277, 571 P.2d 1100, 1102 (1977).

Furthermore, the Act does not preclude tort actions which meet the requirements of section 10–4–714, 4A C.R.S. (1987). On the contrary, it requires an automobile insurance policy to provide legal liability coverage of at least twenty-five thousand dollars for bodily injury or death arising out of the use of a motor vehicle. Section 10–4–706(1)(a), 4A C.R.S. (1987). Thus, the fact that an injured person is unable to recover PIP benefits does not foreclose other remedies, at least with respect to serious injuries. Here the record indicates that in addition to PIP benefits, Rose's complaint originally sought damages for personal injuries from Allstate's insured. This liability claim was settled by Allstate for $20,000.

In adopting this standard, we effectively define both "occupying" as used in section 10–4–707(1)(c), as well as "pedestrian" as used in section 10–4–703(9). Because persons injured in accidents involving automobiles will normally fit into one category or another, we recognize that "pedestrian" encompasses all those persons who are not riding in or upon a vehicle, or who are not in the immediate act of entering into or alighting from a vehicle. Of course the term "pedestrian" is limited to those whose injuries have some causal connection to the use of a motor vehicle. *Trinity*, 690 P.2d at 230.

### III.

Because under the undisputed facts of this case Rose had begun the immediate act of entering into the vehicle owned by his companion when that vehicle was struck by a vehicle driven by Allstate's insured, Rose was an occupant of that vehicle at the time of his injury and was not a pedestrian. Thus, the trial court erred in finding that Rose was a pedestrian. The judgment of the court of appeals is affirmed.

---

**2.** Allstate's policy with its insured is not in the record but Allstate asserts in its brief that the policy incorporates this definition of "occupying."