**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff–Appellee,**

v.

**Renee W. STEIN, Defendant–Appellant.**

**No. 95CA0432.**

Colorado Court of Appeals, Div. V.

March 7, 1996.

Rehearing Denied April 4, 1996.

Certiorari Granted Oct. 15, 1996.

Levy & Lambdin, P.C., Marc R. Levy, Scott P. Landry, Linda A. Battalora, Englewood, for Plaintiff–Appellee.

Gary H. Hemminger, P.C., Gary H. Hemminger, Denver, for Defendant–Appellant.

.

Opinion by Judge TAUBMAN.

In this declaratory judgment action, defendant, Renee W. Stein, appeals the summary judgment entered in favor of plaintiff, State Farm Mutual Automobile Insurance Company (State Farm), determining that defendant could not stack uninsured motorist benefits from multiple automobile insurance policies issued by State Farm. We reverse and remand.

In September 1991, Renee Stein's husband, Joel Stein, was killed when he was struck by an uninsured motorist while riding a bicycle. It was stipulated that the uninsured motorist was totally at fault.

At the time of the accident, Renee and Joel Stein had five separate automobile insurance policies with State Farm that each provided $100,000 per person uninsured motorist coverage. Each policy also contained "anti-stacking" provisions that limited State Farm's total liability if the insured was a pedestrian, was occupying his or her own vehicle, or was occupying another vehicle.

Renee Stein sought $500,000 from State Farm for herself and as guardian for four of her children (the insureds) as damages resulting from Joel Stein's death. State Farm paid the insureds $100,000, representing the amount it contended was available after application of the "anti-stacking" provisions of the policies.

The insureds then filed a demand for arbitration under the terms of the policy. State Farm responded by filing a complaint in the district court seeking declaratory relief to determine the applicability of the "anti-stacking" provisions. Arguing that arbitration was a condition precedent to litigation, the insureds filed a motion to dismiss, which was granted by the district court. The case then proceeded to arbitration and the insureds were awarded $454,000 minus the $100,000 already paid by State Farm. The district court confirmed the arbitration award and entered judgment thereon.

State Farm appealed, and a division of this court held that whether the "anti-stacking" provisions applied was a non-arbitratable issue. The judgment confirming the arbitration award was therefore reversed and the cause was remanded to the district court for further proceedings. *State Farm Mutual Automobile Insurance Co. v. Stein,* 886 P.2d 326 (Colo.App.1994).

On remand, the district court found that the term "pedestrian," as it was used in the "anti-stacking" provisions of the uninsured motorist portion of the policies, was ambiguous. However, it then concluded that "when that term is construed within the context of the coverage language, [Joel Stein] was a pedestrian at the time he received his injuries." Thus, it determined that the policies' "anti-stacking" provisions applied. Of the insureds, only Renee Stein appeals the trial court's determination to this court.

### I. Construction of Insurance Policies

Stein contends that the term "pedestrian," as it is used in the uninsured motorist section of the policy, is ambiguous. She further argues that because an ambiguous term must be construed against the drafter, the "anti-stacking" provisions do not apply. We disagree that the term "pedestrian" is ambiguous; however, under the circumstances presented here, we agree that the "anti-stacking" provisions of the policies do not apply to her claim for benefits.

The interpretation of a contract for insurance is an issue of law that may be reviewed *de novo.* As with any contract, we first look to the language of the policy to ascertain the intent of the parties. *Union Insurance Co. v. Houtz,* 883 P.2d 1057 (Colo. 1994).

Technical construction of an insurance contract should be avoided and the contract should be construed as it would be understood by persons of ordinary intelligence. *Simon v. Shelter General Insurance Co.,* 842 P.2d 236 (Colo.1992). Words should be given their plain meaning according to common usage and strained interpretations should be avoided. *Compton v. State Farm Mutual Automobile Insurance Co.,* 870 P.2d 545 (Colo.App.1993).

Provisions seeking to limit coverage must be clearly expressed. In the absence of a clear expression of limitation, the insurance

contract must be construed in favor of coverage. *Tepe v. Rocky Mountain Hospital & Medical Services,* 893 P.2d 1323 (Colo.App. 1994).

■ Here, except for the declarations page, the five policies contain identical language. Each provides coverage when an insured sustains bodily injury "caused by accident arising out of the operation, maintenance or use of an *uninsured motor vehicle.*" (emphasis original) Each policy also contains "anti-stacking" provisions that limit the uninsured benefits available if the insured sustains bodily injury: (1) as a pedestrian; (2) while occupying the car listed on the declarations page of the policy; or (3) while occupying a car not owned by the insured, the insured's spouse, or any relative of the insured.

The only dispute here concerns the definition of "pedestrian." The term "pedestrian" is not defined in the general definitions or in the uninsured motorist section of the policies. However, in the preceding section of the policies concerning "no-fault" coverage, the term "pedestrian" is defined as "a *person* not *occupying* a *motor vehicle* or machine operated by a motor or engine." (emphasis original)

In contrast to this definition, the common meaning of the term "pedestrian" is "a person who travels on foot." *Webster's Third New International Dictionary,* 1664 (1969). Thus, if the term "pedestrian," as it is used in the "anti-stacking" provisions of the policies, is accorded its common meaning, then the "anti-stacking" provisions would not apply.

State Farm argues that the "anti-stacking" provisions must be read in conjunction with the other provisions of the policy. Accordingly, State Farm asserts that, for purposes of coverage, the term "pedestrian" encompasses any person not occupying a motor vehicle, including a bicyclist. We are not persuaded.

First, any intention that the "no-fault" definition of the term "pedestrian" was to be utilized with regard to uninsured motorist benefits is defeated by the language of the policies themselves. All words that are specifically defined in the policies are noted by boldface italics. Thus, while "pedestrian" is a defined term for purposes of "no-fault" coverage and is so noted by boldface italics in that section, it is not highlighted by boldface italics in the next section concerning uninsured motorist coverage. This difference implies that the definition of the term "pedestrian" to be used in connection with the "no-fault" section of the policies does not apply with regard to uninsured motorist benefits.

Second, the definition of the term "pedestrian" in the "no-fault" section of the policies is technical in nature in that it is based on the statutory definition of this term in the No–Fault Act. *See* § 10–4–703(9), C.R.S. (1994 Repl.Vol. 4A). That definition is intended to be expansive in nature specifying who may obtain no-fault benefits rather than, as here, who is restricted from obtaining benefits. *See Tepe v. Rocky Mountain Hospital & Medical Services, supra.* Thus, the term "pedestrian" is not used in the same context in the two sections and serves different purposes.

Third, the use of three distinct categories in describing when uninsured motorist provisions under multiple policies may not be stacked suggests that stacking was to be limited in only those circumstances. While these three provisions can be read as an attempt by State Farm to prevent stacking in all circumstances, the contrary interpretation can also be made, especially given use of the undefined term "pedestrian" rather than an all-encompassing phrase such as "any person not occupying a motor vehicle."

Finally, we reject State Farm's argument that, because the requirements for uninsured motorist coverage are part of a comprehensive legislative scheme for the compensation of persons injured in automobile accidents, the terms used in uninsured motorist policies should be afforded the same definitions as those contained of the No–Fault Act, § 10–4–701, et seq., C.R.S. (1994 Repl.Vol. 4A). More specifically, State Farm contends that the definition of "pedestrian" contained in § 10–4–703(9), C.R.S. (1994 Repl.Vol. 4A) of the No–Fault Act should apply to determinations of uninsured motorist insurance cover-

age under § 10–4–609, C.R.S. (1994 Repl.Vol. 4A). We disagree.

In *Trinity Universal Insurance Co. v. Hall,* 690 P.2d 227 (Colo.1984), the supreme court held that "pedestrian" as defined in § 10–4–703(9) should be limited to its statutory definition of "any person not occupying or riding in or upon a motor vehicle or machine operated by a motor or engine." In so holding, the *Trinity* court overruled a more expansive definition of the term "pedestrian" which had been used by a division of this court in *Smith v. Simpson,* 648 P.2d 677 (Colo.App.1982). *See also Rose v. Allstate Insurance Co.,* 782 P.2d 19 (Colo.1989) (following *Trinity,* limits definition of "pedestrian" to that contained in § 10–4–703(9)).

Under § 10–4–703, C.R.S. (1994 Repl.Vol. 4A) of the No–Fault Act, the definition of "pedestrian" is expressly limited to "this Part 7 [the No–Fault Act], unless the context otherwise requires...." Thus, this language evinces a legislative intent that the definition of "pedestrian" contained in that section applies only to the No–Fault Act, and not to legislative provisions concerning uninsured motorist coverage.

In our view, the phrase "unless the context otherwise requires" does not suggest that the definitions contained in § 10–4–703 apply to all uninsured motorist coverage provisions. If such were the case, the language limiting the definitions to "this Part 7" would always be overridden by the exception. Had the General Assembly intended that the definition of "pedestrian" in § 10–4–703(g) would apply to all uninsured motorist coverage provisions, it could have said so plainly.

Moreover, nothing in the language of *Trinity Universal Insurance Co. v. Hall, supra,* or *Rose v. Allstate Insurance Co., supra,* indicates that the supreme court intended to provide a global definition which would apply to all persons injured in automobile accidents.

■ Therefore, for the reasons stated above, we conclude that the term "pedestrian" must be construed in accordance with its common meaning and that the "anti-stacking" provisions do not express a clear intention to limit coverage. Thus, the policies must be construed in favor of coverage. *See Tepe v. Rocky Mountain Hospital & Medical Services, supra.*

## II. Ambiguity in Insurance Policies

Even if we were to agree with the trial court that the term "pedestrian" in the policies is ambiguous, we would reach the same result.

■ Any ambiguities in the contract language must be construed against the drafter and in favor of the insured. *Simon v. Shelter General Insurance Co., supra.* A term is ambiguous when it is reasonably susceptible to more than one meaning. *Compton v. State Farm Mutual Automobile Insurance Co., supra.* In making this determination, the insurance policy as a whole must be examined. *Wota v. Blue Cross & Blue Shield,* 831 P.2d 1307 (Colo.1992). Further, when an insurer seeks to restrict coverage, the limitation must be clearly expressed and written such that a reasonable lay person, by reading the policy, can understand the coverage provided. *Tepe v. Rocky Mountain Hospital & Medical Services, supra; Travelers Indemnity v. Howard Electric,* 879 P.2d 431 (Colo.App.1994).

■ Here, applying these rules of construction, even if we assume that the intended limitation of the anti-stacking provisions is not clearly expressed, we conclude that these provisions must be construed against State Farm and in favor of the Steins.

Accordingly, we also conclude that the trial court erred in determining that the "anti-stacking" provisions of the uninsured motorist section of the policies were applicable to Renee Stein's claim. Therefore, the judgment for $354,000 in favor of the insureds should be reinstated. *See In re Arbitration between Lynch & Three Ponds Co.,* 656 P.2d 51 (Colo.App.1982) (those portions of an award which are severable from matters which go beyond the arbitrator's jurisdiction are not void).

The judgment is reversed and the cause is remanded to the trial court with directions to reinstate the May 27, 1994 judgment against State Farm in the amount of $354,000.

ROTHENBERG, J., concurs.

CASEBOLT, J., dissents.

Judge CASEBOLT dissenting.

In my view the term "pedestrian" should be given the meaning that the parties both contracted for and defined in the insurance policy. Accordingly, I respectfully dissent.

The rights and duties of the parties to an automobile insurance policy are defined by the terms and conditions of the insurance contract. As in other areas of contract law, the language of an insurance policy is determinative of the intent of the parties. *Lopez v. Dairyland Insurance Co.*, 890 P.2d 192 (Colo.App.1994). *See Radiology Professional Corp. v. Trinidad Area Health Ass'n*, 195 Colo. 253, 577 P.2d 748 (1978) (intent of the parties to a contract is to be determined primarily from the language of the document itself).

Insurance contract terms are to be construed as they would be understood by a person of ordinary intelligence. *Simon v. Shelter General Insurance Co.*, 842 P.2d 236 (Colo.1992). When construing the language of an insurance contract, one should not read its provisions in isolation, but must consider them as a whole. *Security Insurance Co. v. Houser*, 191 Colo. 189, 552 P.2d 308 (1976).

If a limitation or exclusion in the policy is unambiguous, the limitation or exclusion must be enforced. *State Farm Mutual Automobile Insurance Co. v. Mendiola*, 865 P.2d 909 (Colo.App.1993).

An integrated contract is to be interpreted in its entirety with the end of seeking to harmonize and to give effect to all provisions so that none will be rendered meaningless. *Pepcol Manufacturing Co. v. Denver Union Corp.*, 687 P.2d 1310 (Colo.1984). When the parties give contractual terms specific meanings, those provisions should control. *See Thomas v. Great Western Sugar Co.*, 773 P.2d 582 (Colo.App.1988).

Here, each policy contains an identical "anti-stacking" clause that essentially limits uninsured benefits to the proceeds of one policy if the insured sustains bodily injury as a pedestrian. While the term "pedestrian" is not specifically defined in the uninsured or general definitions section of the policy, it *is* defined in the no-fault section of the contract to mean "a person not occupying a motor vehicle or machine operated by a motor or engine."

Because of the presence of the definition of that term in the contract, in my view a person of ordinary intelligence would understand that such definition would apply throughout the entire agreement. It would defeat, rather than fulfill, the expectations of a policyholder to convey two different meanings for the same word. Indeed, to permit defined terms to have variable meanings could throw into question whether there had been a "meeting of the minds" necessary for the formation of a contract. Thus, because the intent of the parties is to be ascertained primarily from the terms of the contract itself, and the parties have supplied a definition in the contract, I see no need to supply a "common meaning" that conflicts with that understanding.

The majority reasons that, because "pedestrian" is italicized within the no-fault coverage and is not italicized in the uninsured motorist section, different meanings are required. I disagree. The policy does not state that certain words have a *different* meaning from definitions set forth if they are *not* italicized. The mere failure to italicize a word should not affect its meaning when the parties have supplied their own definition. The stated definition should control throughout.

The majority further reasons that the term "pedestrian" in the no-fault section of the policies is technical in nature because it is based on the statutory definition of this term contained in § 10–4–703(9), C.R.S. (1994 Repl.Vol. 4A). That is precisely the point. The parties here decided to give the term the technical meaning set forth in the statute and the policy, and we are not at liberty to rewrite their contract. *See Federal Deposit Insurance Corp. v. American Casualty Co.*, 843 P.2d 1285 (Colo.1992).

The majority further states that the statutory definition of "pedestrian" under the No-Fault Act is used to define expansively the persons who may obtain no-fault benefits

rather than, as here, to specify those who are restricted from obtaining benefits. However, the anti-stacking provision does not prevent the insured from obtaining benefits. Rather, it simply limits benefits to the proceeds of one policy, an effect which is consistent with the public policy of this state. *See Shelter Mutual Insurance Co. v. Thompson,* 852 P.2d 459 (Colo.1993).

Moreover, uninsured motorist coverage merely permits an injured insured to recover for loss caused by an uninsured motorist in the same manner and to the same extent that recovery would be permitted for a loss due to the negligence of an insured motorist. *Cung La v. State Farm Automobile Insurance Co.,* 830 P.2d 1007 (Colo.1992). Hence, the statute does not require full indemnification of losses suffered at the hands of uninsured motorists under all circumstances. *Terranova v. State Farm Mutual Automobile Insurance Co.,* 800 P.2d 58 (Colo.1990).

Furthermore, it is incongruous to define a term statutorily as *broader* than its common meaning for the purpose of *granting* no-fault coverage, *see, e.g., Trinity Universal Insurance Co. v. Hall,* 690 P.2d 227 (Colo.1984), but then to disregard that statutory meaning and judicially interpret the very same word in a much *narrower* sense here for the purpose of defeating a coverage limitation. *See Rau v. Liberty Mutual Insurance Co.,* 21 Wash.App. 326, 585 P.2d 157 (1978) (statutory policy vitiates any attempt to make meaning of "insured" for purposes of uninsured motorist coverage narrower than meaning of term under liability section).

The majority also reasons that the use of three distinct categories in describing when uninsured motorist benefits under multiple policies may not be stacked indicates an intention to limit the anti-stacking clause to only those enumerated circumstances. The majority's interpretation of "pedestrian" would have the effect of preventing stacking for insureds who are injured while on foot, yet allow stacking for insureds who fortuitously are injured by motor vehicles while riding bicycles, using skate boards, or roller skating. In my view, this distinction would lead to inconsistent and absurd results.

Furthermore, such an interpretation would encourage disputes between insureds and carriers to determine whether the insured qualifies as someone other than a "person who travels on foot," *see Rose v. Allstate Insurance Co.,* 782 P.2d 19 (Colo.1989), rather than following the statutory and policy no-fault definition which would allow easy application to numerous factual situations. Defining a pedestrian in accordance with the statute and as stated in the policy here is in harmony with the recognition that persons involved in automobile accidents will generally fall into two simple categories: those who are "occupying" a vehicle by riding in or upon it and those who are not, the latter being classified as "pedestrians." *Rose v. Allstate Insurance Co., supra.*

In addition, in my view the requirement for uninsured motorist coverage is part of a comprehensive legislative scheme regulating automobile insurance policies. Thus, unless defined otherwise in the policy, the terms used should be afforded the same definitions as those contained in statutes dealing with automobile insurance, in particular, the No-Fault Act.

Provisions of the No-Fault Act have been applied to uninsured motorist coverage. For example, In *Lopez v. Dairyland Insurance Co., supra,* a division of this court applied § 10–4–721, C.R.S. (1994 Repl.Vol. 4A) to a claim involving uninsured motorist coverage. That statutory section, found in the No-Fault Act, allows insurers to exclude certain named drivers from insurance coverage. The division held that the statute was applicable to preclude uninsured motorist coverage for a passenger injured while riding in the described vehicle because the policy specifically excluded the named individual driver.

In *Cung La v. State Farm Automobile Insurance Co., supra,* the court held that the meaning of the term "arising out of" contained in the liability section of an automobile insurance policy had the same meaning when applied to the uninsured motorist provisions of that policy.

In *Aetna Casualty & Surety Co. v. McMichael,* 906 P.2d 92 (Colo.1995), the court held that the uninsured motorist statute requires insurers to offer uninsured motorist coverage

to a class of persons or entities as extensive as the class covered under the liability provisions of an automobile insurance policy.

When an insurer proposes to issue an automobile insurance policy in this state, there are three things it must do. First, it must offer liability coverage in an amount that is required by both the Motor Vehicle Financial Responsibility Act, *see* § 42–7–103(2), C.R.S. (1993 Repl.Vol. 17), and the No-Fault Act, *see* § 10–4–706(1)(a), C.R.S. (1994 Repl.Vol. 4A). Second, it must provide PIP benefits as set forth in the No-Fault Act. *See* § 10–4–706(1)(b), C.R.S. (1994 Repl.Vol. 4A). Third, it must offer uninsured and underinsured motorist coverage, which must be included in the policy unless rejected by the insured in writing. *See* § 10–4–609, C.R.S. (1994 Repl. Vol 4A); *Aetna Casualty & Surety Co. v. McMichael, supra.*

The purposes of providing these benefits are similar. The declared purpose of the No-Fault Act is to avoid inadequate compensation to victims of automobile accidents. This overall purpose is clearly served by imposing upon the insurer a duty to offer uninsured and underinsured motorist coverage so as to protect the insured against the risk of inadequate compensation for damages sustained in an automobile accident with an uninsured motorist. *McMichael v. Aetna Insurance Co.,* 878 P.2d 61 (Colo.App.1994), *aff'd sub nom. Aetna Casualty & Surety Co. v. McMichael, supra.*

Thus, because of this overlap and integration, there are cogent policy reasons to read the definitions in one section of an automobile insurance policy to apply in other sections dealing with a different type of coverage when the contract language does not preclude it.

Finally, contrary to the majority's reasoning, the definition of "pedestrian" in the No-Fault Act is not expressly limited to that Act. Section 10–4–703, C.R.S. (1994 Repl.Vol. 4A) states:

> As used in this part 7, unless the context otherwise requires:

* Tursi, J., would GRANT.

. . . .

(9) 'Pedestrian' means any person not occupying or riding in or upon a motor vehicle or machine operated by a motor or engine.

Nothing in this language *limits* that definition to part 7. Rather, this section simply indicates that, *as used in the No-Fault Act,* the term has that specific meaning. Thus, nothing in the statute prohibits the use of the No-Fault Act's definition of "pedestrian" in other statutes dealing with automobile insurance or in other sections of an automobile insurance policy.

Because I would apply the policy definition and the identical statutory definition here, I would affirm the trial court's determination.