AETNA CASUALTY & SURETY
COMPANY, Petitioner,

v.

Phillip McMICHAEL, Respondent.

No. 94SC225.

Supreme Court of Colorado,
En Banc.

Oct. 30, 1995.

Long & Jaudon, P.C., Frederick W. Long, Lee A. Lindsay, Denver, for Petitioner.

Lloyd C. Kordick & Associates, Lloyd C. Kordick, Colorado Springs, for Respondent.

Justice LOHR delivered the Opinion of the Court.

We granted certiorari to review the Colorado Court of Appeals' decision in *McMichael v. Aetna Insurance Co.*, 878 P.2d 61 (Colo. App.1994), which reversed the trial court's grant of summary judgment for the defendant, Aetna Casualty & Surety Company (Aetna),[1] and against the plaintiff, Phillip

---

**1.** In the briefs before this court, both parties correctly refer to the defendant below as Aetna Casualty & Surety Company. In the trial court, however, the plaintiff consistently referred to the defendant as Aetna Insurance Company, and the

McMichael, in a declaratory judgment action brought to establish the scope of coverage under an automobile insurance policy. McMichael sought uninsured/underinsured motorist ("UM/UIM") benefits pursuant to a Business Auto Coverage Policy that Aetna issued to McMichael's employer. McMichael pursued these benefits for injuries he incurred while sawing concrete joints in a highway in front of his employer's vehicle. The court of appeals held that the public policy of section 10–4–609, 4A C.R.S. (1994), required insurers to provide UM/UIM coverage to a class of individuals as broad as the class provided with liability coverage under the terms of the automobile insurance policy. 878 P.2d at 63. Because the Aetna policy provided permissive users of covered vehicles with liability coverage, and permission was undisputed, the court of appeals concluded that McMichael would be entitled to UM/UIM benefits if he was using a covered vehicle at the time of the accident. *Id.* at 64. The court of appeals further determined that McMichael was using a covered vehicle as a barricade and a warning device and, thus, was entitled to compensation for his injuries under the policy. *Id.* We now interpret section 10–4–609(1) to require insurers to offer UM/UIM coverage to a class of individuals as broad as the class covered under the liability provisions of an automobile insurance policy. In addition, we agree with the court of appeals that the salient facts are undisputed and that McMichael was using a covered vehicle at the time of the accident. Therefore, we affirm the court of appeals' reversal of the trial court's grant of summary judgment for Aetna and the direction on remand that the trial court enter judgment declaring McMichael to be within the scope of the UM/UIM coverage of the policy at issue.

## I.

The trial court resolved this case on Aetna's motion for summary judgment. The following facts, therefore, are taken from the parties' submissions to the trial court directed to that motion.

McMichael was employed by Irving F. Jensen Company, Inc. (Jensen) as an assistant superintendent of construction.[2] On February 1, 1990, Jensen assigned McMichael to saw concrete joints in the median of a divided highway. McMichael, along with another employee, drove a company-owned truck to the median and parked. The truck was specially equipped with an overhead beacon and emergency flashers. After McMichael parked the truck, he left it running, turned on the overhead beacon and emergency flashers, and began his work. McMichael was in the process of sawing joints in the concrete some distance in front of the truck when a car approaching from the opposite direction swerved into the median and struck him. The record suggests that the windows of the car were frosted over, making it difficult for the driver to see. As a result of this collision, McMichael suffered injury to his neck.

The motorist who struck McMichael did not maintain enough automobile insurance to compensate McMichael for his injuries. To obtain full compensation, McMichael filed an underinsured motorist claim with Aetna, the insurer for Jensen's vehicles. Jensen carried a Business Auto Coverage Policy through Aetna (the Aetna policy). The Aetna policy covered more than eighty of Jensen's company-owned vehicles. It provided UM/UIM coverage to the following individuals:

**B. WHO IS AN INSURED**

1. You.

2. If you are an individual, any "family member."

3. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto." The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.

court of appeals' opinion uses that latter designation.

**2.** At various times during McMichael's employment with Jensen, McMichael worked with and received compensation through various subsid-

iaries of Jensen. Since all of these companies were insured under the same automobile insurance policy, the fact that McMichael worked for various subsidiary companies does not affect this case.

4. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured."

The term "You" referred to the "Named Insured" as shown in the Declarations to the policy. The Aetna policy listed "Irving F. Jensen Co., Inc." as the named insured. In response to McMichael's claim for UM/UIM benefits, Aetna denied coverage. Aetna informed McMichael that his loss was not covered by the terms of the policy. In response to this denial, McMichael filed a complaint for declaratory relief and to compel arbitration against Aetna in El Paso County District Court.

Aetna filed an answer and a motion for summary judgment. In its motion for summary judgment, Aetna argued that because McMichael was not a named insured under the policy, he could recover underinsured motorist benefits only if he was injured while "occupying" an insured vehicle. *See* par. B3 of insurance policy, *supra*, at p. 4. Because it was uncontroverted that McMichael was not occupying an insured vehicle at the time of the accident, Aetna claimed McMichael was not entitled to benefits.

In his response to Aetna's motion for summary judgment, McMichael argued that because the policy listed Jensen, a corporation, as the named insured, the employees of the corporation should be considered named insureds. In the alternative, McMichael argued that underinsured motorist coverage under the insurance policy should be extended to cover the same class of persons covered by the liability provision of the policy. The liability provision listed the following individuals as insureds:

1. WHO IS AN INSURED

The following are "insureds":

a. You [3] for any covered "auto."

b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except [listing exceptions not applicable here].

The liability provision of the Aetna policy covered permissive users of insured automobiles while the UM/UIM provision covered only permissive occupiers. *See* par. B3 of insurance policy, *supra*, at p. 4. McMichael argued that as a matter of public policy, UM/UIM coverage should be extended to cover a class as broad as that covered by the liability portion of the policy, in this case permissive users. In addition, McMichael argued that he was "using" Jensen's truck, an insured vehicle, for protection at the time of the accident.[4] Therefore, McMichael claimed that he was entitled to underinsured motorist coverage.

The district court granted summary judgment for Aetna. It found there were no disputed issues of material fact and concluded that:

[T]he Auto Business Policy [Aetna policy] at issue here is clear and unambiguous and, as a matter of law, does not afford UM/UIM coverage for Plaintiff because he was not a named insured and was not occupying a covered vehicle at the time of the accident.

The court noted that there was nothing in the record to indicate that McMichael, as an employee, was intended to be a named insured. In addition, both parties agreed that McMichael was not occupying an insured vehicle at the time of the accident. Thus, the trial court determined that McMichael was not entitled to underinsured motorist coverage under the terms of the insurance policy. McMichael appealed the district court's ruling to the Colorado Court of Appeals.

The court of appeals reversed the district court's ruling and remanded the case with directions to enter judgment declaring McMichael to be covered by the UM/UIM provision of the Aetna Policy. *McMichael*, 878 P.2d at 65. The court of appeals held that automobile insurers may not issue an automobile insurance policy including UM/UIM coverage that covers a class of persons that is narrower than the class covered under the liability provision of the policy. *Id.* at 63.

---

3. As noted above, the term "You" refers to the named insured as listed in the Declarations to the policy. In this case, the named insured was Jensen. *See supra*, at pp. 4–5.

4. The parties do not dispute the fact that Jensen's truck was a covered auto under the terms of the policy.

Because the liability provision of the Aetna insurance policy covered permissive users of covered autos, the court of appeals held that the UM/UIM provision also must cover permissive users. *Id.* at 64; *see* par. 1b of insurance policy, *supra*, at p. 6. Thus, McMichael was entitled to UM/UIM coverage if he was *using* Jensen's truck, a covered auto, at the time of the injury. After a review of the undisputed facts in the record, the court of appeals concluded that McMichael was using Jensen's truck for warning and protection at the time of the accident and, therefore, was covered by the policy. 878 P.2d at 64–65.

Aetna sought review of the court of appeals' decision by this court. We granted certiorari to resolve the following two issues:

[1] Whether the court of appeals erred in holding that the petitioner must extend UM/UIM coverage to anyone using an insured vehicle with the permission of the named insured.

[2] Whether [the] court of appeals erred in holding that the respondent was "using" his employer's truck when he was injured.

We hold that section 10–4–609, 4A C.R.S. (1994), requires insurers to offer UM/UIM coverage to a class as extensive as the class covered under the liability provision of an automobile insurance policy. In the context of this case, Aetna was required to offer Jensen UM/UIM coverage for permissive users of company-owned automobiles. In addition, considering the undisputed facts in the record, we agree with the court of appeals that McMichael has established that he was *using* a covered auto at the time of the accident. We therefore affirm the court of appeals' reversal of the trial court's grant of summary judgment and its remand of the case to the trial court for entry of judgment declaring that McMichael is within the scope of the UM/UIM coverage of the policy at issue.

## II.

Aetna argues that section 10–4–609, 4A C.R.S. (1994), does not require insurers to extend UM/UIM coverage to everyone eligible for liability coverage under the policy. We disagree.

Section 10–4–609(1) states in pertinent part:

**Insurance protection against uninsured motorists.** (1) No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle licensed for highway use in this state unless coverage is provided therein or supplemental thereto ... *for the protection of persons insured thereunder* who are legally entitled to recover damages from owners or operators of uninsured motor vehicles ...; except that the named insured may reject such coverage in writing.

(Emphasis added).[5] This section compels insurance companies issuing automobile liability policies to include UM/UIM coverage in their policies unless the named insured rejects such coverage in writing. *Morgan v. Farmers Ins. Exch.*, 182 Colo. 201, 203, 511 P.2d 902, 904 (1973). Although we have consistently held that insurers are required to offer UM/UIM coverage to their customers, we have never determined what class of persons this offer must cover. *See Allstate Ins. Co. v. Parfrey*, 830 P.2d 905, 912–13 (Colo. 1992) (insurer has a one-time duty to notify the insured of the nature and purpose of UM/UIM coverage and to offer the insured the opportunity to purchase such coverage). By its terms, section 10–4–609(1) prohibits insurance companies from issuing or delivering insurance policies in this state "unless coverage is provided therein or supplemental thereto ... for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles...." Thus, in order to resolve the issue before us we must determine the meaning of this phrase.

---

5. Section 10–4–609 was amended in 1995. However, the above-quoted provisions remain unchanged, and the amendment is not applicable to the present case. *See* § 10–4–609, 4A C.R.S. (1995 Supp.).

A.

■ In determining the nature and scope of an insurer's duty pursuant to section 10–4–609(1), we are guided by long-established rules of statutory construction. *Parfrey*, 830 P.2d at 911. When interpreting statutes we must give full effect to the intent of the legislature. *Passamano v. Travelers Indem. Co.*, 882 P.2d 1312, 1318 (Colo.1994). To do so, it is our duty to interpret statutory terms in accordance with their plain and ordinary meaning. *Bertrand v. Board of County Comm'rs*, 872 P.2d 223, 228 (Colo. 1994); *Scoggins v. Unigard Ins. Co.*, 869 P.2d 202, 205 (Colo.1994); *see* § 2–4–101, 1B C.R.S. (1980). If a statute is ambiguous, we may consider legislative history as indicative of legislative intent. § 2–4–203(1)(c), 1B C.R.S. (1980); *General Elec. Co. v. Niemet*, 866 P.2d 1361, 1364 (Colo.1994); *Charnes v. Boom*, 766 P.2d 665, 667 (Colo.1988). Moreover, we may take into account the underlying purpose or policy of the statutory enactments when determining the legislative intent. *Gambler's Express Inc. v. Public Utils. Comm'n*, 868 P.2d 405, 410 (Colo.1994); *In re Estate of Royal*, 826 P.2d 1236, 1238 (Colo.1992).

Read within the context of section 10–4–609(1), the phrase "for the protection of persons insured thereunder" means that insurers must provide UM/UIM coverage for the protection of persons insured under the liability policy that the insurer is issuing. The word "thereunder" refers back to the liability policy that is being delivered or issued. "Persons insured thereunder," accordingly, refers to persons insured under the liability policy. Thus, under the plain meaning of section 10–4–609(1), insurers must provide UM/UIM coverage for all individuals covered under the liability provision of the policy unless the named insured refuses such coverage in writing.

Other jurisdictions that have reached this question have interpreted the phrase "for the protection of persons insured thereunder" as intended to provide uninsured motorist coverage for any person who has liability coverage under the policy. In his treatise on automobile liability insurance, Irvin E. Schermer writes:

The majority of uninsured motorist statutes do not expressly define the classes of persons to whom uninsured motorist coverage is intended to be extended. They simply state that automobile liability insurance policies must provide uninsured motorist coverage "for the protection of persons insured thereunder." Such terminology has been interpreted as intended to confer uninsured motorist coverage upon anyone who is insured under the liability coverages of the policy.

2 Irvin E. Schermer, *Automobile Liability Insurance No–Fault Insurance Uninsured Motorists Compulsory Coverage* § 27.07, at 27–42 (2d ed. 1994). *Accord, e.g., State Farm Auto. Ins. Co. v. Reaves*, 292 Ala. 218, 292 So.2d 95, 98–99 (Ala.1974) (plain language of statute mandating UM/UIM coverage for "persons insured thereunder" requires uninsured motorist coverage for those insured under liability portion of policy); *Pappas v. Central Nat. Ins. Group of Omaha*, 400 Mich. 475, 255 N.W.2d 629, 631 (1977) (UM/UIM coverage must be provided to class of persons insured under liability portion of policy). Our interpretation of section 10–4–609(1), therefore, comports with cases from other states, which have held that insurers must provide UM/UIM coverage to the same class of individuals covered under the liability provisions of automobile insurance policies.

The legislative history and policy underlying the adoption of section 10–4–609(1) lend further support to our conclusion. In 1965, the General Assembly adopted House Bill 1116, the first two sections of which established the requirement that uninsured motorist coverage be made available to purchasers of automobile liability insurance. Ch. 91, 1965 Colo.Sess.Laws 333–58; *see Passamano*, 882 P.2d at 1319. The first section, entitled "Declaration of Purpose," contained the following language:

Section 1.—**Declaration of Purpose.**—The general assembly is acutely aware of the toll in human suffering and loss of life, limb, and property caused by negligence in the operation of motor vehicles in our state. Although it recognizes that this basic problem can and is being dealt with by

direct measures designed to protect our people from the ravages of irresponsible drivers, the general assembly is also very much concerned with the financial loss visited upon innocent traffic accident victims by negligent motorists who are financially irresponsible. In prescribing the sanctions and requirements of this act, it is the policy of this state to induce and encourage all motorists to provide for their financial responsibility for the protection of others, and *to assure the widespread availability to the insuring public of insurance protection against financial loss caused by negligent financially irresponsible motorists.* Ch. 91, sec. 1, 1965 Colo.Sess.Laws 333 (emphasis added); *see also* § 42–7–102, 17 C.R.S. (1995 Supp.). Thus, by enacting section 10–4–609(1), the General Assembly intended to protect the public from the devastating financial loss that a traffic accident victim can incur. *See also Parfrey,* 830 P.2d at 911 (purpose of requiring insurers to offer UM/UIM coverage is "to protect the insured against the risk of inadequate compensation resulting from injuries and damages incurred in an automobile accident with an uninsured or underinsured motorist"). Further, the General Assembly intended to provide a mechanism through which an insured could purchase insurance coverage against loss caused by the negligent conduct of a financially irresponsible motorist. *Kral v. American Hardware Mut. Ins. Co.,* 784 P.2d 759, 763 (Colo.1989). The language of the declaration of purpose also demonstrates a legislative intent to encourage the widespread availability of UM/UIM coverage.

Given this intent, we interpret section 10–4–609(1) to require insurers to offer UM/UIM coverage to a class of individuals coextensive with the class covered by the liability provision of the respective policy. To hold otherwise would fail to implement the General Assembly's intent to make UM/UIM coverage widely available. Consumers unaware of or unschooled in the vagaries of insurance contracts could be misled into believing they have purchased coverage when in reality they have not. Moreover, this interpretation provides protection to individuals from loss caused by negligent, financially irresponsible motorists. Thus, the legislative history and

the policy behind the adoption of section 10–4–609(1) support our conclusion that insurers must offer UM/UIM coverage to a class coextensive with the coverage offered under the liability provision of the policy.

Similarly, other jurisdictions have employed the purpose and public policy underlying the enactment of uninsured motorist statutes, akin to the one at issue here, as support for their conclusion that the statutes mandate UM/UIM coverage to the same class covered under the liability provisions of policies. *See, e.g., Mullis v. State Farm Mut. Auto. Ins. Co.,* 252 So.2d 229, 233–35 (Fla. 1971) (public policy of uninsured motorist statute is to provide uniform and specific insurance benefits to cover bodily injury caused by the negligence of insolvent or uninsured motorists); *Forrester v. State Farm Mut. Auto. Ins. Co.,* 213 Kan. 442, 517 P.2d 173, 178 (1973) ("purpose of the uninsured motorist law is to recompense innocent persons who are damaged through the wrongful act of uninsured motorists who are not financially responsible"); *Kaysen v. Federal Ins. Co.,* 268 N.W.2d 920, 924–25 (Minn. 1978) (legislature intended broad-based protection when it required uninsured motorist coverage for protection of individuals insured thereunder); *Rau v. Liberty Mut. Ins. Co.,* 21 Wash.App. 326, 585 P.2d 157, 159 (1978) (statutory policy vitiates any attempt to make meaning of "insured" for purposes of uninsured motorist coverage narrower than meaning of term under liability section). By requiring a broader class of insureds to be covered under the UM/UIM provision of automobile insurance policies, these courts have attempted to give effect to the public policy of protecting motorists from the devastating financial loss that can result from automobile accidents.

In conclusion, we hold that the plain language and legislative history of section 10–4–609(1), together with the public policy upon which the statute was based, compel the conclusion that insurers must offer UM/UIM coverage to a class of insureds coextensive with the class of insureds covered under the liability provision of the policy. In the context of this case, because the Aetna policy covered permissive users of insured vehicles

for purposes of liability coverage, it was required that the policy cover permissive users of covered vehicles for purposes of UM/UIM coverage.

### B.

 Aetna next argues that section 10–4–608, 4A C.R.S. (1994), exempts insurance policies covering more than four vehicles from the requirements of section 10–4–609(1), 4A C.R.S. (1994). Aetna interprets section 10–4–608 to mean that when an automobile liability policy insures more than four automobiles, the insurer is not required to offer UM/UIM coverage to an insured. Because the policy Aetna issued to Jensen insured more than eighty vehicles, Aetna contends it did not have to comply with the requirements of section 10–4–609(1). We disagree.

Section 10–4–608 states in pertinent part: "*Exemptions.* This part 6 shall not apply ... to any policy insuring more than four automobiles." Aetna argues that we must read the statute to exempt the Aetna policy, which covers more than eighty vehicles, from the requirements of section 10–4–609. Because section 10–4–608 was enacted independently of section 10–4–609 and was not intended to modify or otherwise affect the substantive interpretation of section 10–4–609's uninsured motorist coverage mandate, we decline to adopt such a reading.

In *Passamano v. Travelers Indemnity Company,* 882 P.2d 1312, 1320 (Colo.1994), we explained that the provisions currently codified as sections 10–4–601 to 10–4–608, 4A C.R.S. (1994 & 1995 Supp.), and section 10–4–609, 4A C.R.S. (1994), respectively, were originally enacted four years apart and were not codified in the same volume of the Colorado Revised Statutes. Sections 10–4–601 to 10–4–608 regulated the procedures for automobile policy cancellation while section 10–4–609 related to uninsured motorist coverage. 882 P.2d at 1320–21. As we stated in *Passamano,* "The adoption of the Cancellation Act [the provisions now codified at sections 10–4–601 to 10–4–608] in 1969 did not undermine the intent or effect of the adoption in 1965 of

House Bill 1116 [now codified at section 10–4–609]." *Id.* at 1320.

These sections came to be codified adjacent to each other only as a result of subsequent repeals, reenactments and recodifications, none of which was intended to effect any change in the substantive interpretation of these provisions. *Id.* at 1320–21. In *Passamano,* we noted that this reorganization did not affect the language or policy thrust of the relocated sections:

> The Cancellation Act remained codified at section 10–4–601 to –608, 4 C.R.S. (1973 & 1979 Supp.). The language of section 10–4–609, 4 C.R.S. (1973 & 1979 Supp.), remained directed exclusively to the requirement that purchasers of automobile liability insurance policies be offered the opportunity to purchase uninsured motorist coverage. That requirement furthered the declaration of purpose articulated in section 1 of House Bill 1116; it had no relationship to the purposes and requirements of the Cancellation Act first articulated in 1969 in Senate Bill 350 and recodified in 1973 at sections 10–4–601 to –608, 4 C.R.S. (1973).

*Passamano,* 882 P.2d at 1321. Viewed in the context of their legislative development, these provisions are entirely unrelated and should not be read together to create an unintended limitation on the UM/UIM coverage requirements of section 10–4–609. Accordingly, we hold that section 10–4–608 does not exempt the Aetna policy from complying with the requirements of section 10–4–609 as set out above in part IIA.

### III.

 Aetna argues that even if we hold that liability coverage and UM/UIM coverage must be coextensive, McMichael is excluded from liability coverage by the terms of the insurance contract.[6] We disagree.

Section II of the Aetna policy is entitled "Liability Coverage." In part A of section II, the policy describes the liability coverage it provides, including who is an insured.

---

6. Although this issue was not within our grant of certiorari, we consider it briefly here in order fully to resolve this case.

McMichael, to the extent that he was a permissive user of a covered vehicle, is an insured under the liability coverage section. *See* par. 1b of insurance policy, *supra*, at p. 6.

In part B of section II, the policy lists "Exclusions," presumably meaning exclusions from liability coverage. It states:

B. Exclusions:

This insurance does not apply to any of the following:

. . . . .

3. WORKERS COMPENSATION
Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers compensation, disability benefits or unemployment compensation law or any similar law.
4. EMPLOYEE INDEMNIFICATION AND EMPLOYER'S LIABILITY
"Bodily injury" to:
a. An employee of the "insured" arising out of and in the course of employment by the "insured";

These quoted sections relate to types of claims excluded from liability coverage and merely absolve Aetna from having to pay certain claims that McMichael might assert against his employer, Jensen. In this case, McMichael is suing Aetna for UM/UIM benefits. These benefits substitute for benefits that McMichael would have received from the motorist who caused his injuries. The benefits do not constitute workers' compensation benefits and do not result because of a suit brought by McMichael against Jensen. Because McMichael's claim is based on the liability incurred by the driver who caused the accident, the exclusions do not apply to McMichael's claim for UM/UIM benefits.[7]

As McMichael's specific claims are not excluded, Aetna may prevail only if the provisions affect McMichael's status as an insured for purposes of liability coverage. The exclusions listed above exempt Aetna from paying for certain claims under the liability coverage of the policy. They do not determine who is an insured under the liability provisions and thus also covered as an insured under the UM/UIM provisions of the policy. *Rau v. Liberty Mut. Ins. Co.*, 21 Wash.App. 326, 585 P.2d 157, 159–60 (1978). Despite the exclusions, employees remain as insureds under the liability provision of the Aetna policy as long as they are using a covered auto. Accordingly, because the exclusions set forth above do not affect McMichael's status as an insured under the liability portion of the policy, and the exclusions apply only in the context of the liability provisions, Aetna may not use the exclusions to avoid providing UM/UIM coverage to McMichael.

**IV.**

██ Because we have concluded that Aetna violated section 10–4–609(1), 4A C.R.S. (1994), when it issued an insurance policy that provided liability coverage for users of insured vehicles but limited UM/UIM coverage to occupiers of insured vehicles, we must determine what the remedy for this violation should be.

██ In the absence of ambiguity, an insurance policy must be given effect according to the plain and ordinary meaning of its terms. *Matter of Estate of Daigle*, 634 P.2d 71, 79 (Colo.1981). However, even if a policy provision is unambiguous, the provision is void and unenforceable if it violates public policy by attempting to "dilute, condition, or limit statutorily mandated coverage." *Meyer v. State Farm Mut. Auto Ins. Co.*, 689 P.2d 585, 589 (Colo.1984) (superseded by statute as stated in *Allstate Ins. Co. v. Feghali*, 814 P.2d 863, 865–66 (Colo.1991)). Insurance policy clauses that are contrary to a provision of a statute are void as against public policy. *Meyer*, 689 P.2d at 588. Consistently, this court has refused to enforce provisions in automobile insurance policies that are against public policy. *See, e.g., Kral v. American Hardware Mut. Ins. Co.*, 784 P.2d 759, 765 (Colo.1989) (subrogation clause and release trust agreement unenforceable because enforcement would result in inability to obtain full compensation for loss and therefore would violate legislative policy); *Meyer*, 689 P.2d at 592 (household exclusion unenforceable because violative of purposes of No–Fault

---

7. The Workers' Compensation statute does not bar McMichael from bringing a tort action against the driver who caused the accident. § 8–41–203, 3B C.R.S. (1995 Supp.).

Act). Because we have determined that the Aetna policy violated section 10–4–609, we hold the uninsured motorist provision limiting coverage to persons occupying a covered vehicle, pursuant to which Aetna denied McMichael coverage as simply a permissive user, to be void. *See* par. B3 of insurance policy, *supra,* at p. 4.

Section 10–4–609(1) compels UM/UIM coverage for all those covered under the liability provisions of an automobile insurance policy. Courts faced with insurance policies that violate mandatory coverage requirements have read those requirements into the policy. *See Murphy v. Dairyland Ins. Co.,* 747 P.2d 691, 695–96 (Colo.App.1987) (because insurance policy term adopted for PIP coverage was void as against public policy, general policy definition of such term must be utilized in determining plaintiff's entitlement to PIP benefits under policy); *accord Hendricks v. Meritplan Ins. Co.,* 205 Cal.App.2d 133, 22 Cal.Rptr. 682, 684 (Cal.Dist.Ct.App.1962) (language of insurance code requiring uninsured motorist coverage becomes in effect a part of policy as if it were written out in policy itself); *State Farm Mut. Auto. Ins. Co. v. Selders,* 187 Neb. 342, 190 N.W.2d 789, 792 (1971) (if policy fails to comply with statute, statute will be read into policy); *Amidzich v. Charter Oak Fire Ins. Co.,* 44 Wis.2d 45, 170 N.W.2d 813, 817 (1969) (insurance policy omitting a required coverage will be enforced as if written in accordance with statute). For purposes of this case we adopt this remedy. We therefore read the Aetna policy to provide UM/UIM coverage for permissive users of covered autos in accordance with the mandate of section 10–4–609(1).

## V.

Because we have decided that the Aetna policy must provide UM/UIM coverage to permissive users of insured vehicles, resolution of this case depends on whether McMichael was *using* an insured vehicle at the time of the accident. The trial court, in resolving this case on summary judgment, did not reach the question of whether McMichael was using his truck. The court of appeals, however, held that based on the undisputed facts, McMichael's injuries arose out of the use of the truck. We agree and therefore affirm the court of appeals' determination that McMichael was within the UM/UIM coverage of the policy.

## A.

We first briefly review our case law interpreting the term "use" in automobile insurance policies. In *Kohl v. Union Insurance Co.,* 731 P.2d 134 (Colo.1986), we interpreted section 42–7–413(1)(c), 17 C.R.S. (1984), which provides the minimum level of coverage required for an automobile liability insurance policy. The language of section 42–7–413(1)(c) requires liability insurance policies to "insure every [insured] person on account of the maintenance, use, or operation of the motor vehicle." [8] In *Kohl,* we stated that "[a]n accident occurs 'on account of the use of a motor vehicle' if the injury that forms the basis of the claim is causally related to a conceivable use of the insured vehicle that is not foreign to its inherent purpose." 731 P.2d at 135; *see also Azar v. Employers Casualty Co.,* 178 Colo. 58, 61, 495 P.2d 554, 555 (1972); *Mason v. Celina Mut. Ins. Co.,* 161 Colo. 442, 444, 423 P.2d 24, 25 (1967). We have applied this definition as an aid in interpreting a similar requirement contained in an uninsured motorist provision in an insurance policy. *Cung La v. State Farm Auto Ins. Co.,* 830 P.2d 1007, 1010–11 (Colo. 1992). Thus, the definition of use contained in *Kohl* provides a starting point from which to interpret the Aetna policy.

## B.

■ The first issue we must determine is whether McMichael was using an insured vehicle in a manner that was not foreign to its inherent purpose at the time of the accident. Aetna argues that McMichael could not have been using Jensen's truck because he was some distance in front of the truck. We disagree.

---

8. Section 42–7–413 is presently codified at § 42–7–413, 17 C.R.S. (1995 Supp.). *See* ch. 337, part 4, § 42–7–413, 1994 Colo.Sess.Laws 2094, 2484.

Although, in general, operation of a motor vehicle for transportation purposes would constitute use, our cases demonstrate that use may have a broader meaning. We have held that injuries occurring during the loading and unloading of a vehicle involve the vehicle's use. *See, e.g., Kohl,* 731 P.2d at 135–36 (injury resulting from accidental discharge of rifle that occurred when rifle was removed from vehicle gun rack arose out of use of vehicle); *Titan Constr. Co. v. Nolf,* 183 Colo. 188, 194, 515 P.2d 1123, 1126 (1973) (injury received while unloading ready-mix concrete truck when hose connected to truck knocked brick off roof arose out of use of vehicle). These cases did not turn on the proximity of the claimant to the vehicle at the time of the accident but, rather, the particular activity in which the claimant was engaged.

Similarly, in *Trinity Universal Insurance Co. v. Hall* the plaintiff was injured when a collapsible side awning permanently attached to a truck used as a refreshment stand fell and struck her head as she was buying refreshments. 690 P.2d 227 (Colo.1984). Because we concluded that the injuries arose out of the use of the truck as a refreshment stand, we held that the plaintiff qualified for personal injury protection benefits under the truck's automobile liability policy. *Id.* at 231. We stated:

> A vehicle may be used to sell food and drink. Here, where the pickup truck had been factory-modified for use as a catering truck and mobile refreshment stand, language referring to its use as a motor vehicle does not necessarily exclude liability in this case. The use of a motor vehicle as contemplated in the insurance policy depends upon the factual context of each case.

*Id.* at 231 n. 4. Thus, we implied that when determining the meaning of the term "use" in an automobile insurance policy, a court must look to the factual circumstances in each case, including the particular characteristics of the vehicle and the intention of the parties to the insurance contract. *See Kohl,* 731 P.2d at 136 (transportation of hunters and their weapons to areas where they can pursue their sport is conceivable use of four-wheel-drive vehicle).

Although we have never considered whether a vehicle used as a barricade or warning device could be considered "in use" for purposes of automobile insurance benefits, other jurisdictions have addressed this issue. For example, in *Great American Insurance Co. v. Cassell,* 239 Va. 421, 389 S.E.2d 476 (1990), a fire fighter was injured while filling out a report approximately twenty-five feet away from his fire truck. The Supreme Court of Virginia agreed with the trial court's finding that the fire fighter was using the fire truck within the scope of his duties at the time of the accident. The court stated, "Use of the fire truck to extinguish the fire, control traffic and protect the fire fighters, including Cassell, was an integral part of the fire fighters' mission." *Id.* at 477. The court then held that because the fire fighter was engaged in a "transaction" essential to the use of the fire truck when he was killed, the insurer was required to provide insurance coverage. *Id.*

Other jurisdictions have also focused on whether the insured vehicle's purpose was connected to its use as a barricade in finding insurance coverage for the accident. *See, e.g., Monroe Guar. Ins. Co. v. Campos,* 582 N.E.2d 865, 867 (Ind.Ct.App.1991) (tow truck operator injured while walking from police vehicle to tow truck was engaged in activity essential to towing process and thus was using tow truck for purposes of insurance coverage); *Thibodeaux v. Burton,* 538 So.2d 1001, 1004–05 (La.1989) (construction worker injured while working in road and utilizing truck with flashing yellow sign instructing oncoming cars to detour was using truck for purposes of insurance coverage); *Oberkramer v. Reliance Ins. Co.,* 650 S.W.2d 300, 302–03 (Mo.Ct.App.1983) (police officer injured twenty-five to fifty feet from police car was using police car as road block for purposes of insurance coverage). *But see Hawkeye–Security Ins. Co. v. Gilbert,* 124 Idaho 953, 866 P.2d 976, 983–84 (1994) (motorist's use of his automobile as a barricade to block a bicyclist's avenue of movement was not a use reasonably related to the car's inherent nature as a vehicle); *see also Insurance Co. of North America v. Perry,* 204 Va. 833, 134

S.E.2d 418, 421 (1964) (police officer who left police car to serve warrant was not using car at time of accident).

In this case, the record reflects that McMichael was using the insured truck at the time of the accident. McMichael left the truck running as he worked some distance in front of it. The truck was specially equipped with an overhead beacon and emergency flashers, both of which were on at the time of the accident. The fact that the truck was modified with warning devices suggests that the truck was intended to be used as a protective device. The truck also carried protective barriers to the work site that were placed around the truck and in the median for protection. Furthermore, given the involvement of Jensen, McMichael's employer and the named insured on the Aetna policy, in contracting and construction activities, the use of the truck for warning purposes in conjunction with such activities was both conceivable and foreseeable at the time the parties entered the insurance contract. These factors adequately establish that McMichael was using the truck in a manner not foreign to its inherent purpose at the time of the accident. The fact that McMichael was some distance in front of the truck at the time of injury is not dispositive. While proximity may indicate use, it is only one factor to be weighed as part of the totality of the circumstances present in the case.

## C.

Aetna next argues that even if McMichael was using the truck at the time of the accident, this use was not causally related to his injuries. In particular, Aetna claims that because the automobile that caused McMichael's injuries came from the opposite direction and struck him in front of the truck, the truck could not have been a "but for" cause of the accident.

As in the majority of other jurisdictions, we have required some causal relationship between the claimant's injuries and the

use of the insured vehicle when evaluating claims for automobile insurance benefits. *Kohl,* 731 P.2d at 135; *see generally* Larry D. Scheafer, Annotation, *Automobile Liability Insurance: What Are Accidents or Injuries "Arising Out of Ownership, Maintenance, or Use" of Insured Vehicle,* 15 A.L.R.4th 10, 17 (1982) (cases agree that causal relation or connection must exist between accident or injury and the ownership, maintenance, or use of the vehicle). The reason for this causal requirement is to ensure that there is some nexus between the vehicle's use and the injury. This nexus guarantees that the accident is within the kind of risks that the automobile insurance contract was meant to cover.

In *Kohl,* we explained that in order to establish the requisite causal relationship between the use of the vehicle and the injury, the claimant must show that the accident would not have occurred but for the vehicle's use. 731 P.2d at 135; *Titan Constr. Co.,* 183 Colo. at 194, 515 P.2d at 1126. Although the use of "but for" terminology suggests that the use of the vehicle must be the cause of the injuries, we have utilized a more liberal interpretation in our cases. We have not required that the vehicle be moving at the time of the accident or that the vehicle be the sole cause of the accident. In fact, we have interpreted the test as requiring the plaintiff to show only that the injury originated in, grew out of, or flowed from a use of a vehicle. *Kohl,* 731 P.2d at 136. Thus, the causation test does not require that the insured vehicle itself be the source of the injury, only that the use be integrally related to the claimant's activities and the injury at the time of the accident.[9]

In accordance with this reasoning, we have rejected claims where the only relationship between the injury and the vehicle is that the injury occurred in the vehicle. In doing so, we have distinguished between "injuries that are related to the use of an automobile, and injuries that are related to an automobile

---

9. As an example, in *Kohl,* the claimant was injured while lifting a rifle out of his car's gun rack. 731 P.2d at 137. The car could not have caused or prevented the gun from discharging. Nevertheless, we held that the claimant's injuries were causally related to the use of the car. *Id.* We stated: "Weaver's actions were intimately related to his use of the vehicle as transportation for himself and his rifle from a mountain hunting area to his home in Canon City." *Id.*

only because they coincidentally occurred in the vehicle." *Kohl*, 731 P.2d at 136; *see, e.g., Azar*, 178 Colo. at 61, 495 P.2d at 555 (injury caused to passenger when shotgun discharged as driver pulled weapon back into car after preparing to shoot at rabbit from car window did not arise out of use of auto); *Mason*, 161 Colo. at 444, 423 P.2d at 25 (death occurring from discharge of pistol while three youths were toying with the weapon in insured's vehicle did not arise out of a covered use of vehicle). In these cases, the injury could have occurred in any location and had no connection to the use of the vehicle.

In the present case, McMichael's injuries arose out of his use of the truck as a barricade and warning device. McMichael was aware of the dangers posed to roadway workers by passing cars. Accordingly, he did not begin work or enter the roadway area until he had positioned the truck to serve as a warning of his presence. McMichael relied on the truck's flashing lights and warning beacon to protect him from oncoming traffic. This reliance supports the conclusion that McMichael's use of the truck, and particularly its specifically designed safety features, was an integral part of his work on the roadway. Accordingly, McMichael's use of the truck was causally related to the ensuing accident. The fact that the driver who hit McMichael may have been at fault does not change our conclusion. *See supra*, at p. 29 & n. 13. The truck's apparent failure to serve its protective function did not make the truck's use any less integral to McMichael's work at the time he entered the roadway.

McMichael's case is distinguishable from the cases where we have denied coverage on the basis that the vehicle was merely the situs for the accident. In the situs cases, the accident was unrelated to the use of the vehicle because the accident could have occurred anywhere. For example, in *Mason* three youths were toying with a pistol in the insured's vehicle when the pistol discharged and injured one of them. 161 Colo. at 443, 423 P.2d at 24. This event could have occurred on the street, in a house, or on a porch. Just sitting in the vehicle did not create the causal relationship necessary to implicate coverage under the insurance policy. In the present case, McMichael's accident was integrally related to his work on the road, where it was expected that he would be put in danger from other motorists. For this reason, the truck was specially equipped with protective gear and warning devices and was positioned to provide a barrier. Thus, at the time of the accident, McMichael was using the truck for protection, the truck was not merely the physical location where the accident occurred.

## VI.

In conclusion, we hold that section 10–4–609(1), 4A C.R.S. (1994), required Aetna to provide UM/UIM coverage to the same class of persons covered under the liability provision of the policy. Because the liability provision of the policy covered permissive users, we read the statutory mandate of section 10–4–609 into the UM/UIM provision of the Aetna policy, and hold that it provides UM/UIM coverage to permissive users. Furthermore, we hold that the trial court erred in entering summary judgment for Aetna. Based on the undisputed facts, McMichael has established that he was using an insured vehicle at the time of the accident and that the use of this vehicle was causally related to the accident. Therefore, we affirm the judgment of the court of appeals.

ERICKSON, J., concurs in part and dissents in part, and KOURLIS, J., joins in the concurrence and dissent.

VOLLACK, C.J., dissents.

Justice ERICKSON, concurring in part and dissenting in part:

Although I agree with the majority that, at the time of his injury, Phillip McMichael was "using" the truck as that term is used in the policy issued by Aetna Casualty & Surety Company (Aetna) which is at issue here, *see Kohl v. Union Ins. Co.*, 731 P.2d 134 (Colo. 1986), I agree with Chief Justice Vollack that section 10–4–609(1), 4A C.R.S. (1994), does not compel insurers to offer Uninsured Motorist/Underinsured Motorist (UM/UIM) to all persons and entities covered by the liability provisions of an automobile liability policy.

I also agree with Justice Vollack that the plain language of section 10–4–608, 4A C.R.S. (1994), exempts the policy at issue in this case from compliance with section 10–4–609(1). I write separately to clarify why the situation in this case differs from that with which we were confronted in *Passamano v. Travelers Indemnity Co.*, 882 P.2d 1312 (Colo.1994).

In *Passamano*, based on legislative history, we determined that the definition of "policy" in section 10–4–601, 4A C.R.S. (1994), did not limit the scope of section 10–4–609, the uninsured motorist provision. *Passamano*, 882 P.2d at 1318–22. Before making that determination, however, we stated:

> [W]e must give full effect to the language of the General Assembly requiring all insurers to offer uninsured motorist coverage, as set forth in section 10–4–609, as well as the definitional provisions of section 10–4–601(2). However, we must also consider the introductory language to the definitional provisions of section 10–4–601, which provides that in some contexts the definitions contained therein, including the definition of the term "policy," might not be applicable.
>
> We thus consider the legislative history. . . .

*Id.* at 1319.

In this case, we are not confronted with a situation in which the applicability of a statutory provision is determined by its context. Because section 10–4–608 unequivocally states that "[t]his part 6 *shall not apply* . . . to any policy insuring more than four automobiles," (emphasis added), a resort to the "interpretive rules of statutory construction" is inappropriate. *See General Elec. Co. v. Niemet*, 866 P.2d 1361, 1364 (Colo.1994). The "statutory terms should be given effect according to their plain and ordinary meaning." *See Bertrand v. Board of County Comm'rs*, 872 P.2d 223, 228 (Colo.1994). Section 10–4–608 exempts the policy at issue here from the requirements of section 10–4–

609 because the policy covered more than eighty vehicles.[1]

Accordingly, I concur in part and dissent in part. In my view, the trial court did not err in granting summary judgment for the defendant, Aetna, and the court of appeals erred in reversing that judgment.

I am authorized to say that Justice KOURLIS joins in this concurrence and dissent.

Chief Justice VOLLACK, dissenting:

The majority holds that section 10–4–609(1), 4A C.R.S. (1994), requires that Aetna Casualty and Surety Company (Aetna) provide Uninsured Motorist/Underinsured Motorist (UM/UIM) coverage to the same class of persons covered under the liability provision of the policy Aetna issued to the Irving F. Jensen Company, Inc. (Jensen). The majority also concludes that section 10–4–608, 4A C.R.S. (1994), which exempts policies insuring more than four vehicles from the requirements of part 6,[1] does not apply to section 10–4–609(1). Finally, the majority determines that Phillip McMichael (McMichael) was using the insured vehicle at the time of the accident and that the use of the vehicle was causally related to the accident.

I dissent because the plain language of section 10–4–608 exempts the policy at issue from compliance with section 10–4–609(1) as that policy insured more than four automobiles. I also disagree with the majority's holding that section 10–4–609(1) mandates that insurers must offer UM/UIM coverage to all those covered by the liability provisions of a policy. Finally, I dissent from the majority's holding that McMichael was using the insured vehicle at the time of the accident and that the use of the vehicle was causally related to the accident.

I.

On February 1, 1990, McMichael, an employee of Jensen, was assigned to saw concrete joints in the median of a divided high-

---

1. We noted the potential applicability of § 10–4–608 to cases involving § 10–4–609 in *Passamano*. 882 P.2d at 1318 n. 6.

1. Part 6 (titled "Automobile Insurance Policy—Regulations") refers to §§ 10–4–601 through 10–4–613, 4A C.R.S. (1994), of Article 4 (titled "Property and Casualty Insurance") of Title 10 of the Colorado Revised Statutes.

way. McMichael, accompanied by another employee, drove one of Jensen's pickup trucks (the "Jensen truck") westbound to the location at which the work was to be performed. The truck was parked facing west on the side of the highway, and the warning signals on the truck were turned on. McMichael then removed a cement saw from the truck and began sawing concrete about seventy-five feet in front of the truck. As he was working, a car approaching from the west swerved into the median and struck him. There was never any contact between the eastbound car that struck McMichael and Jensen's truck which was parked seventy-five feet east of the accident.

The Jensen truck was insured pursuant to a Business Auto Coverage Policy through Aetna Casualty and Surety Company (the Aetna policy). The Aetna policy insured more than eighty of Jensen's vehicles. Additionally, the policy specifically provided UM/UIM coverage to a limited class of individuals. McMichael filed an underinsured motorist claim under the Aetna policy to recover compensation for his injuries, as the motorist who struck him did not maintain sufficient liability insurance coverage to compensate him fully.

Aetna denied coverage and filed a motion for summary judgment, arguing that McMichael could not recover because he was not a named insured under the policy. Aetna asserted that McMichael was not entitled to benefits because the policy language specified that an individual who was not a named insured could only recover if they were occupying an insured vehicle, and McMichael was not occupying the Jensen truck when he was injured.

In response to Aetna's motion for summary judgment, McMichael argued, *inter alia*, that the UIM coverage of the insurance policy should be extended, as a matter of public policy, to cover the same class of individuals covered by the liability provision of the policy. McMichael asserted that UM/UIM coverage should thus be extended to permissive users of an insured vehicle rather than just the named insured and those occupying an insured vehicle. McMichael also argued that he was "using" the Jensen truck

at the time of the accident, as was required for coverage by the Aetna policy.

The district court granted Aetna's motion for summary judgment, concluding that the plain language of the Aetna policy precluded McMichael's coverage, as he was not a named insured and was not occupying the vehicle at the time of the accident. McMichael then appealed the district court's grant of summary judgment to the Colorado Court of Appeals. The court of appeals reversed the trial court's ruling, holding that automobile insurers may not, as a matter of policy, issue an automobile insurance policy that includes UM/UIM coverage covering a class of individuals narrower than the class covered by the liability provision of the policy. As the Aetna policy provided liability coverage for those "using" a vehicle, but only provided UM/UIM coverage for "named insureds" and those "occupying" a covered vehicle, the court held that the Aetna policy was violative of the public policy behind section 10–4–609(1). The court thus construed the UM/UIM provision of the Aetna policy to protect all individuals injured while "using" a covered vehicle. The court of appeals also concluded that McMichael was using the Jensen truck at the time of the accident and was thus covered by the policy.

## II.

The plain language of section 10–4–608, 4A C.R.S. (1994), exempts the Aetna policy from the UM/UIM provision of section 10–4–609, 4A C.R.S. (1994). Thus, I would hold that the UM/UIM provision of the Aetna policy should be read as written, and I would therefore deny coverage to McMichael as he was not occupying the Jensen truck at the time of the accident.

Section 10–4–608 states, in pertinent part: "**Exemptions.** This part 6 shall not apply to any policy ... insuring *more than four automobiles....*" (Emphasis added.) The majority relies on the extensive analysis of the legislative history of part 6 in *Passamano v. Travelers Indemnity Company,* 882 P.2d 1312 (Colo.1994), to find that the legislature did not intend that section 10–4–608 modify or otherwise affect the substantive interpre-

tation of section 10–4–609's UM/UIM provision. Maj. op. at 97. I dissented in *Passamano* because such statutory analysis is inappropriate when the statute is facially unambiguous, and I reiterate that view here. It is well established law that,

> [i]n construing statutes, this court's primary task is to ascertain and give effect to the intent of the legislature; to do so, the court must first look to the language of the statute itself. When the language of the statute is clear so that the legislature's intent can be discerned with reasonable certainty, *there is no need to resort to other rules of statutory interpretation.*

*People v. District Court,* 894 P.2d 739, 742 (Colo.1995) (citations omitted) (emphasis added).

In my view, the statutory language is manifest and unequivocal. Based upon my reading of the plain language of sections 10–4–608 and 10–4–609, I conclude that the UM/UIM provision does not apply to an automobile insurance policy insuring more than four vehicles. As the Aetna policy insured in excess of eighty vehicles, I would hold that it is exempt from the UM/UIM provision of section 10–4–609. Because I do not believe that the UM/UIM provision applies to the Aetna policy, I would construe the policy as it was initially agreed upon by the parties: the UM/UIM provision of the policy covers McMichael only if he is a named insured or if he was occupying the insured vehicle at the time of the accident. As McMichael is not a named insured on the Aetna policy, and he was seventy-five feet from the Jensen truck when the accident occurred, I would hold that the court of appeals erred by reversing the trial court's order of summary judgment in Aetna's favor.

### III.

I write further to clarify that even if I were to accept, *arguendo,* the majority's holding that section 10–4–609(1) applies, and that the UM/UIM coverage must be coextensive with the coverage afforded by the liability provision of the Aetna policy,[2] I would still hold that coverage should be denied because

**2.** I elaborate here to clarify my disagreement with the majority's holding that, as a matter of public policy, an insurer may not contractually agree with its insured to offer more restrictive coverage under the UM/UIM portion of the insurance policy than is offered under the liability portion. Section 10–4–609(1) states, in pertinent part:

> No automobile liability ... policy ... shall be ... issued ... in this state ... unless coverage is provided therein or supplemental thereto ... for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles ... resulting therefrom; except that the named insured may reject such coverage in writing.

My disagreement with the majority's view stems from its interpretation of the phrase "for the protection of persons insured thereunder" as relating back to all those who *could* be covered under the liability portion of the policy. I believe the majority paints with too broad a brush by utilizing such a construction, and thereby makes a decision of public policy that is best left within the province of the legislature.

> It has long been the law in Colorado that, [w]here provisions of an insurance policy are couched in plain and unambiguous language and do not contravene some principle of public policy, a court has no right by a forced construction or interpretation to require a result not intended by the contracting parties.

*Massachusetts Mut. Life Ins. Co. v. De Salvo,* 174 Colo. 115, 120, 482 P.2d 380, 383 (1971). The majority acknowledges that the language of the Aetna policy is clear and unambiguous, but then deviates from this plain language by attempting to impose its perceived view of the General Assembly's intended public policy on the provisions of the Aetna policy.

In my view, it is far from clear that § 10–4–609(1) evinces such a public policy. It is true that, at the inception of the UM/UIM Act, the General Assembly articulated a clear public policy to protect those injured by financially irresponsible drivers. *See* Act approved Apr. 30, 1965, ch. 91, secs. 1–8, 1965 Colo.Sess.Laws 333–58. This is not such a sweeping mandate, however, that it may be used broadly, in the absence of clear statutory language, to alter the original intent of the parties to an insurance policy. While § 10–4–609(1) does mandate that UM/UIM coverage be offered to those persons insured under the policy, it does not expressly define the different classes of persons to whom such coverage is to be extended. In fact, the last phrase of that section, "the named insured may reject such coverage in writing," implies that the class to be protected includes only the named insured, and does not extend to all those covered by the liability provision of the policy. Because the statute is ambiguous, I would hold that it does not manifest a principle of public policy compelling enough to force a construction of the Aetna policy not intended by the contracting parties.

I do not believe that McMichael was "using" the Jensen truck at the time of the accident as our prior cases have interpreted that word.

In *Trinity Universal Insurance Co. v. Hall*, 690 P.2d 227 (Colo.1984), we held that " 'there must be a causal relation or connection between the injury and the use of the vehicle in order for the injury to come within the meaning of the phrase "arising out of the use of" a vehicle.' " *Id.* at 230 (quoting *Azar v. Employers Casualty Co.*, 178 Colo. 58, 61, 495 P.2d 554, 555 (1972)). In *Titan Construction Co. v. Nolf*, 183 Colo. 188, 515 P.2d 1123 (1973), we stated that the test to determine the existence of such causation was a "but for" test which was satisfied when "the accident would not have occurred except for the [use] of the insured vehicle." *Id.* at 194, 515 P.2d at 1126. In *Kohl v. Union Insurance Co.*, 731 P.2d 134 (Colo.1986), we set forth the additional requirement that the claimant must "prove that the accident would not have occurred but for a conceivable use of the vehicle *that is not foreign to its inherent purpose.*" *Id.* at 135–36 n. 2 (emphasis added).

In the instant case, the "but for" test of causation is not satisfied, and I would therefore hold that McMichael was not "using" the Jensen truck at the time of the accident, as we have interpreted that term. The majority cites an assortment of cases from a variety of jurisdictions for the proposition that the use of a vehicle as a barricade may constitute "use" for insurance purposes. On these facts, however, McMichael's use of the Jensen truck was not the "but for" cause of the accident. Although McMichael might have been using the truck as a barricade, McMichael was seventy-five feet from the truck when the accident occurred. Moreover, the automobile that struck McMichael approached from the opposite direction from where the Jensen truck was parked. As reflected by the record, the accident occurred because a motorist traveling in the opposite direction from where McMichael had parked the truck could not see out of his fogged windshield and entered the median, striking McMichael.

Additionally, even accepting the proposition that McMichael was "using" the truck as a barricade at the time of the accident, I would hold that he was using the truck in a manner foreign to its inherent purpose. The truck insured by Aetna was an ordinary pickup truck. Common sense dictates that the inherent purpose of a commercial pickup truck is the transportation of workers and materials. It is true that our cases have extended this to unloading and loading a truck, *see Titan Constr.*, 183 Colo. at 194, 515 P.2d at 1126, and other peripheral uses, but it strains credulity to hold that the inherent purpose of a pickup truck is to be used as a barricade to protect workers from oncoming traffic. Our cases have placed the burden on the claimant to establish that he was not using the vehicle in a manner foreign to its inherent purpose. *See, e.g., Cung La v. State Farm Auto. Ins. Co.*, 830 P.2d 1007, 1010–11 (Colo.1992). I would hold that McMichael has failed to meet this burden, and thus was not "using" the Jensen truck at the time of the accident as we have defined that term in our cases.

## IV.

In conclusion, I would hold that section 10–4–608, by its plain and unambiguous language, precludes the application of the UM/UIM provision of section 10–4–609(1) to the Aetna policy. Alternatively, I would hold that, were section 10–4–609(1) to apply, McMichael was not "using" the Jensen truck at the time of the accident as required for coverage by the Aetna policy. I also write to express my dissatisfaction with the majority's sweeping, public policy based decision requiring that the Aetna policy provide UM/UIM coverage coextensive with the coverage provided by the liability provisions of that policy. Accordingly, I dissent.