JUSTICE GABRIEL,
concurring in the judgment.
¶19 I agree with the majority’s ultimate conclusion that on the facts presented here, the Colorado Department of Transportation (the “Department”) did not have the authority to pursue the condemnation at issue. I do not, however, agree with the majority’s construction of section 43-1-208, C.R.S. (2016), and therefore, my analysis differs from that of the majority. Accordingly, I respectfully concur in the judgment only.
I. Analysis
¶20 Because the petition at issue was brought by the Department, I begin by addressing the Department’s condemnation authority and conclude that the Department did not have either statutory or properly delegated authority to condemn the property at issue. I then discuss why I disagree with the majority’s construction of section 43-1-208.
A. The Department’s Condemnation Authority
¶21 As the majority observes, the right to condemn private property in Colorado is a creature of statute and exists only to the extent permitted by our legislature. Maj. op. ¶ 10. Accordingly, “[w]e have often held that narrow construction is the rule in determining the scope of the condemnation power delegated pursuant to legislative enactment.” Coquina Oil Corp, v. Harry Kourlis Ranch, 643 P.2d 519, 522 (Colo. 1982); see also Platte River Power Auth. v. Nelson, 775 P.2d 82, 83 (Colo. App. 1989) (“The constitutional protection against the taking of private property by government without due process imposes on the condemning governmental entity a requirement of strict compliance with and interpretation of the pertinent condemnation statutes.”).
¶22 Although the majority begins the pertinent part of its analysis with a discussion of section 43-1-208, that section concerns the eminent domain authority of the Transporta *124 tion Commission (the “Commission”), an entity created in section 43-1-106, C.R.S. (2016). The petition at issue, however, was brought by the Department, a separate and distinct entity created in section .43-1-103, C.R.S. (2016). See also § 43-1-102(l)-(2), C.R.S. (2016) (separately defining the Commission and the Department). Accordingly, in my viéw, and notwithstanding the fact that the parties all seemed to presume that' section 43-1-208 defines the Department’s condemnation authority, the analysis must begin with a discussion of the Department’s statutory authority to condemn private property.[1]
¶23 Pursuant to section 38—1— 202(l)(b)(IV)(G), C.R.S. (2016), the Department may exercise the power of eminent domain in accordance with a number of enumerated statutes, including, as pertinent here, section 43-l-210(l)-(3), C.R.S. (2016), which provides for the Department’s acquisition of certain- rights of way, as well as of property to be taken for state highway purposes under certain enumerated conditions. Notably, section 38-l-202(l)(b)(IV)(6) does not authorize the Department to exercise the power of eminent domain pursuant to section 43-1-208(3), the section about which the parties are arguing. To the contrary, section 38-l~202(l)(b)(IV)(I) makes clear that the condemnation authority under section 43-1-208(3) belongs to the Commission.
¶24 Accordingly, the first question to be answered is whether the General Assembly has given the Department the same authority that it gave the Commission under section 43-1-208(3). The parties have not cited any such statutory authority (to the contrary, as noted above, they appear to have assumed that section 43-1-208(3) applies), nor have I seen such authority.[2]
¶25 Because the Department does not appear to have the authority granted by section 43-1-208(3), which is the authority at issue, the question becomes whether the Commission, which unquestionably has such authority, could properly delegate that authority to the Department. For two reasons, I do not believe that it could.
¶26 First, any such delegation would effectively allow the Commission to expand the Department’s statutory condemnation authority, thereby undermining the long-settled principles that (1) we construe strictly statutory authorizations of condemnation powers and (2) governmental entities exercising their condemnation powers must strictly comply with the statutes granting such powers. See Coquina Oil Corp., 643 P.2d at 522; Platte River Power Auth., 776 P.2d at 83.
¶27 Second, any such delegation would arguably violate the nondelegation doctrine. The nondelegation doctrine is rooted in the constitutional separation of powers and prohibits the General Assembly from delegating legislative power to another department of government or person. See People v. Holmes, 959 P.2d 406, 409 (Colo. 1998). The doctrine is limited, however, by the fact that regulation through administrative agencies is an accepted part of our legal system. Id. Thus, the General Assembly may properly delegate its legislative power “when it describes what job must be done, who must do it, and the scope of his authority.” Swisher v. Brown, 167 Colo. 378, 402 P.2d 621, 626 (1966).
¶28 Here, to the extent that the General Assembly can be said to have delegated to the Commission legislative authority to con *125 demn private property pursuant to section 43-1-208(3), I perceive no basis for allowing the Commission to take it upon itself to delegate that authority to another entity. •
¶29 I am not persuaded otherwise by the Department’s citations to sections 43-1-106(8)(a), (d), and (f), C.R.S. (2016). The cited provisions authorize the Commission- (1) to formulate policies with respect to the management, construction, and maintenance of public highways; (2) to prescribe administrative practices to be followed by the Commission’s executive director and the Department’s chief engineer; and (3) to require the executive director and the chief engineer 'to furnish whatever assistance the Commission may request with respect to the operation of the Department. Id. I perceive nothing in those sections that authorizes the Commission to delegate its condemnation authority (as opposed to administrative and ministerial functions) to the Department, and for the reasons set forth above, I believe that any such delegation would violate the principle of strict construction of statutory condemnation authority.
¶30 Because the Department does not appear to have either statutory or properly delegated authority to pursue the condemnation at issue, I agree with the majority’s determination to make our rule to show cause absolute, and thus, I concur in the judgment.
B. Section 43-1-208
¶31 Although the foregoing analysis would not require me to address the proper construction of section 43-1-208,1 proceed to do so because both my disagreement with my colleagues and the issues raised in this case suggest a need for legislative action to clarify the General Assembly’s intent regarding the respective condemnation authorities of the Commission and the Department.
¶32 We review de novo questions of law concerning the application and construction of statutes. Hickerson v. Vessels, 2014 CO 2, ¶ 10, 316 P.3d 620, 623. In interpreting statutes, we must give effect to the General Assembly’s intent. Aetna Cas. & Sur. Co. v. McMichael, 906 P.2d 92, 97 (Colo. 1995). To do so, we interpret statutory terms in accordance with their plain and ordinary meanings. Id. In addition, “we examine the statutory language in the context of the statute as a whole and strive to give ‘consistent, harmonious, and sensible effect to all parts.’ ” Reno v. Marks, 2015 CO 33, ¶ 20, 349 P.3d 248, 263 (quoting Denver Post Corp. v. Ritter, 265 P.3d 1083, 1089 (Colo.2011)).. We will not add words to a statute, nor will we subtract words from it. Turbyne v. People, 151 P.3d 563, 567 (Colo. 2007). In the absence of ambiguity, we apply the statute’s language as written. Id. If, however, a statute is ambiguous, then we may consider the statute’s purpose or policy, as well- as its legislative history, to discern the General Assembly’s intent. McMichael, 906 P.2d at 97.
¶33 The majority quotes the entirety of section 43-1-208, see maj. op. ¶ 11 n.l, and I need not re-quote it here. The majority concludes that under section 43-1-208, the Commission must, in all circumstances, do two things. First, the Commission must receive from the Department’s chief engineer a written report describing the portion of the highway to be established or altered, the portions of the land to be taken for such purposes, and an estimate of the damages and benefits accruing to each landowner whose land may be affected. See maj. op. ¶ 13. Second, the Commission must decide whether the public interest or convenience will be served by the proposed change and if so, enter a resolution on its minutes approving the change and authorizing the chief engineer to tender the estimated amount of damages. See id. The majority further appears to conclude that only after both of these things have been accomplished may the Commission choose whether to tender to the landowners the determined amount or, alternatively, to proceed under title 38. See id. For several reasons, I disagree with this construction.
¶34 First, I believe that the majority’s construction is inconsistent with the plain and unambiguous language of section 43-1-208(3). That section provides, in pertinent part, “The transportation commission also has the power and is authorized to proceed in the acquisition of the lands of private persons for state highway purposes, according to said articles 1 to 7 of title 38, C.R.S., without *126 tender or other proceedings under this part 2.”
¶35 In my view, this subsection means precisely what it says, namely, that in matters involving the acquisition of lands of private persons for state highway purposes, the Commission can proceed directly under title 38 (i.e., by filing á condemnation petition) without conducting any other proceedings under part 2 of title 38, which proceedings I take to include the processes set forth in subsections 43—1—208(1)—(2).
¶36 Unlike the majority, I think that such a construction makes peiTect sense. In cases involving the property of private persons, the Commission has two choices. It can potentially avoid litigation by making findings that the public interest or convenience will be served by the acquisition and by then determining and tendering an amount of damages, which the landowner might accept. See § 43-1~208(1)~(3). Alternatively, the Commission can proceed directly to court, where (1) the Commission will be required to plead and prove, among other things, a public use and (2) the compensation to be paid to the owner will be assessed. See §§ 38-1-101(2), 38-1-102(1), 38-1-105 to -107, 38-1-115 C.R.S. (2016). Either way, authorized decision-making bodies—the Commission or a court—will determine the public interest and the proper compensation to be paid to the landowner.
¶37 The majority’s interpretation of section 43-1-208, in contrast, would effectively construe section 43-1-208(3) to read, in pertinent part, “without, tender or other proceedings under this part 2, except for the proceedings set forth in subsections (1) and (2) of this section.” As noted above, however, we may not add words to a statute. See Tur-byne, 151 P.3d at 567.
¶38 Second, although the majority and the parties appear to be moved by the structure of section 43-1-208, the history of that statute persuades me that the structure sheds no light on the legislature’s intent.
¶39 The statute traces back to the 1921 session laws. See ch. 136, sec. 20, 1921 Colo. Sess. Laws 370-71. Notably, in its initial iteration and until 1963, the language of what became section 43-1-208 was all contained in one section with no subsections. See ch. 33, sec. 1404, 1921 Compiled Laws 533; ch. 143, sec. 111, 1935 Colo. Stat. Ann.; § 120-3-8, C.R.S. (1953). In 1963, however, that provision was split into subsections, see § 120-3-8, C.R.S. (1963), and it appears that this was done by the revisor of statutes, as part of the 1963 decennial recodification. Because we have made clear that we will not attach any substantive significance to a statutory re-visor’s bifurcation of a statute into separate subsections, see People v. N. Ave. Furniture & Appliance, Inc., 645 P.2d 1291, 1298 (Colo. 1.982), I assign no significance to the current structure of section 43-1-208, and particularly to the location of the language in section 43-1-208(3), which allows the Commission to proceed directly under title 38.
¶40 Accordingly, unlike the majority, I read section 43-1-208(3) to allow the Commission to choose to proceed directly under title 38 before undertaking the processes described in sections 43-1-208(1) and (2).
II. Conclusion
¶41 For these reasons, I would make the rule to show cause absolute based on the Department’s lack of statutory or properly delegated authority. In doing so, however, I cannot agree with the majority’s construction of section 43-1-208. Accordingly, I respectfully concur in the judgment only.
I am authorized to state that CHIEF JUSTICE RICE and JUSTICE HOOD join in this concurrence in the judgment.

. In fairness to the parties, I acknowledge that throughout our opinion in Department of Nans-portation v. Stapleton, 97 P.3d 938 (Colo. 2004), we spoke of the Department's authority under section 43-1-208(3). That case, however, turned on a construction of the phrase "state highway purposes,” and the distinction between the Department’s condemnation authority and that of the Commission does not appear to have been at issue. In these circumstances, I am unwilling to read into Stapleton a statutory construction that would effectively expand the Department's con- . demnation authority.

. As noted above, section 43-1-210(1) authorizes the Department to condemn certain property for state highway purposes under enumerated circumstances. It is not clear to me that section 43-1-210(1) applies here, and I am unwilling to presume that it does, given that the Department itself did not so argue before this court. Nor am I persuaded by the Department's arguments as to the inferences to be drawii from various statutes defining the Department’s condemnation authority, given that we construe strictly statutory authorizations to condemn private property, Coqui-na Oil Corp,, 643 P.2d at 522; Platte River Power Auth., 775 P.2d at 83.